**STATE of Maine**

v.

**Merwin W. HURD.**

Supreme Judicial Court of Maine.

July 13, 1976.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, for plaintiff.

Franklin F. Stearns, Jr., Ellsworth T. Rundlett, III, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Merwin W. Hurd appeals his conviction by a Cumberland County jury of two counts of rape[1] and two counts of kidnapping.[2] Appeal denied.

At approximately 1:30 a. m. on May 15, 1975, a high school senior who was driving home to Standish after visiting a friend in Westbrook stopped her car on an isolated road in response to a vehicle following closely behind her with a blue light flashing from its dashboard. A man got out of the other car, forced his way into the young woman's automobile, brandished a knife at her, drove her to a secluded area and raped her. After the rape had taken place, the man casually mentioned to his victim that "he had a beautiful woman who he married twice, divorced and married again . . . ." The man drove the woman's car back to where he had left his car, warned the victim not to tell anyone what had happened, got into his car and drove off.

Very early on the Saturday morning of June 7, 1975, a 35 year-old housewife was alone in her car driving from Portland to her home in Gorham. As she passed through Scarborough, a car suddenly appeared behind her with orange "four-way flashers" blinking. The woman continued driving, but soon noticed that the driver of the following car was apparently signalling her to the side of the road by waving a flashlight in his windshield. After she had dutifully stopped her car, a man emerged from the other car and questioned her briefly. The woman was under the impression that her questioner was a police officer. She realized that she was tragically mistaken, however, when the man displayed a knife and pushed his way into her car. The man then drove the woman to an isolated spot and raped her. Afterward, the attacker drove the woman back to where his own car was parked and was last seen by the victim standing beside his car as she drove away.

The defendant was linked to these crimes by a set of keys with a nail clipper attached (State's Exhibit 1) which the first victim found in her car several days after May 15. She turned the keys over to the police, who traced them to a car owned by Hurd. Although Hurd acknowledged that he had lost a set of keys with a nail clipper attached, and conceded that there was a certain resemblance between his keys and State's Exhibit 1, he professed complete ignorance as to how a set of keys owned by him might have come to be located in the victim's car.

The defendant was charged in a single indictment with one count of rape and one count of kidnapping in connection with each of the two described incidents.[3]

I.

At the close of all the evidence, the defendant moved for a judgment of acquittal, and thereby preserved for appellate review the issue of "whether, in view of all the evidence in the case, there was legally sufficient evidence to support the guilty verdict[s]." State v. Kelley, Me., 357 A.2d 890, 892; State v. Burnham, Me., 350 A.2d 577, 582 (1976).

■ We have carefully read the record and are satisfied that the evidence of the defendant's guilt of the heinous offenses with which he was charged is overwhelming. Each of the victims unequivocally

1. 17 M.R.S.A. § 3151.

2. 17 M.R.S.A. § 2051.

3. M.R.Crim.P. 8(a) provides that
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions which are connected or which constitute parts of a common scheme or plan.

identified Hurd at trial as her assailant. For us to review the evidence here would serve no useful purpose. Suffice it to say that the jury's verdicts were warranted, and that the motion for a judgment of acquittal was correctly denied.

## II.

The defendant's second point on appeal challenges an evidentiary ruling by the presiding Justice. Hurd appeared as a witness on his own behalf and testified, *inter alia*, that he was presently married. On cross-examination, without objection by the defendant, the State elicited testimony from Hurd (1) that he was currently physically separated from his wife, (2) that he had married his present wife in 1965, and (3) that he had not been married to her before. At that point, this exchange occurred:

MR. KELLY: Have you been married before this?

THE WITNESS: Yes, sir.

MR. KELLY: I see. How many times?

THE WITNESS: Four times.

MR. KELLY: Four times.

THE WITNESS: Yes.

MR. KELLY: I see, and what has happened to each one of these marriages?

MR. STEARNS: Your honor, I don't believe that's an issue here.

MR. KELLY: Your honor . . .

THE COURT: The objection will be overruled.

MR. KELLY: What has happened to these marriages, Mr. Hurd?

THE WITNESS: They just haven't worked out; divorced.

MR. KELLY: Four divorces?

THE WITNESS. Yes, sir.

Hurd argues that the presiding Justice committed reversible error by overruling the defendant's objection to the State's question regarding the fate of his four prior marriages. The appellant's hypothesis is that the probative value of his testimony that each of his four previous marriages had ended in divorce was outweighed by the allegedly prejudicial effect of such evidence.[4]

■■ This argument is without merit. The trial court has broad discretion in determining whether the risk of prejudice to the defendant outweighs the probative value of evidence.[5] *State v. Gagne*, Me., 343 A.2d 186, 196 (1975); *State v. Northup*, Me., 318 A.2d 489, 493 (1974). In view of the testimony by one of the victims that she had been raped by a man who informed her that he had been married twice to the same woman, evidence of the defendant's marital history was relevant to the issue of whether Hurd was the man who had perpetrated these crimes. In fact, Hurd eventually did testify under continued cross-examination that he had once married, divorced, and re-married the same woman, thereby demonstrating the relevance of the State's persistent questions concerning his marital background. We

4. The force of the appellant's assertion that he was prejudiced by the admission of this evidence is somewhat diminished by the fact that he made only the one cited objection to the State's extensive exploration of his marital history.

5. "It should be emphasized that prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." McCormick's Handbook on the Law of Evidence 439, n. 31 (2d ed. E. Cleary ed. 1972).

hold that the presiding Justice did not abuse his discretion in admitting the defendant's testimony that he had been divorced four times.

The entry is:

Appeal denied.

All Justices concurring.