**STATE of Maine**

v.

**Charles HEALD.**

Supreme Judicial Court of Maine.

Nov. 9, 1978.

David M. Cox, Dist. Atty., John R. Atwood, William R. Stokes (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Vafiades, Brountas & Kominsky by Lewis V. Vafiades, Eugene C. Coughlin, III (orally), Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

The Waldo County Grand Jury returned two indictments against Charles Heald for the 1973 felonious homicides punishable as murder (17 M.R.S.A. § 2651, since repealed and now replaced by 17–A M.R.S.A. §§ 201, 202) of Joaquin and Florence Bettencourt. Heald moved for a change of venue, which was granted, and the cases were transferred to Penobscot County where, after jury trial and convictions for both murders, judgments were appropriately entered. These appeals seasonably ensued.

We deny the appeals.

## FACTS

On the night of December 9, 1973, a violent wind and rain storm caused a power failure within the town of Liberty. Mr. Bettencourt, the proprietor of a used clothing store, was known to carry relatively large sums of money on his person. Closing his store early on account of the blackout, Mr. Bettencourt returned home. Upon his arrival he was killed by a shotgun blast through the chest, plus an additional shot through the forehead with a .22 caliber bullet. Mrs. Bettencourt died as the result of gunshot wounds from two different weapons, one of which was probably a semi-automatic. Investigators discovered candlewax drippings and portions of candles throughout the ransacked Bettencourt home as well as a severed telephone line on the outside of the house. They did not discover any money on the bodies of the deceased Bettencourts.

On appeal the following four instances of judicial error are claimed:

(I) the court's refusal to allow inquiry on voir dire into a key prosecution witness' possible visits to a psychiatrist;

(II) the court's denial of appellant's motion to examine possible psychiatric records of the Bangor Mental Health Institute (BMHI) relating to a key prosecution witness' possible treatment there;

(III) a witness for the State being permitted to testify regarding a previous attempt by the appellant and others to rob the Bettencourts;

(IV) the granting of a continuance that postponed the trial beyond the statutorily-designated 180-day period.

We deal with each of these points in sequential order.

### I

One Judy Harvey had testified as to certain damaging admissions by the appellant regarding the Bettencourt slayings. In an attempt to impeach her testimony counsel for the appellant, on *voir dire* and in the absence of the jury, sought to ask "whether or not she [had] consulted with a psychiatrist." The presiding justice sustained the State's objection, based upon the prejudice of the answer outweighing any probative value. Appellant argues that in refusing to allow this line of cross-examination the justice committed reversible error. We disagree.

A defendant has the right to impeach the credibility of a witness by introducing evidence of a mental disease or defect that would affect the witness' ability to perceive or recall critical events. *See State v. Lewisohn*, Me., 379 A.2d 1192, 1203–04 (1977); *State v. Warren*, Me., 312 A.2d 535, 544 (1973); Field and Murray, *Maine Evidence*, § 607.3 (1976); 3A Wigmore, *Evidence* § 931 (Chadbourn rev. 1970). Impeachment evidence, however, is

likewise subject to an objection based upon unfair prejudice outweighing its probative value. *See State v. Cedre,* Me., 314 A.2d 790, 800 (1974); *State v. Warren, supra* at 540; Field and Murray, *supra,* § 607.2; *see generally* M.R.Evid. 403. A trial justice has broad discretion in determining the admissibility of evidence due to unfair prejudice. *See State v. Hurd,* Me., 360 A.2d 525, 527 (1976); *State v. Gagne,* Me., 343 A.2d 186, 196 (1975).

■ Before evidence of mental incapacity is admissible, whenever the relevance is not otherwise apparent, counsel must lay a foundation by establishing its potential for demonstrating a defect in the ability of the witness to perceive, recall, or truthfully relate the substance of proffered testimony. *See, e. g., United States v. Honneus,* 508 F.2d 566, 573 (1st Cir. 1974); *People v. Gladney,* Colo., 570 P.2d 231, 234–35 (1977); *State v. Crow,* Mo., 486 S.W.2d 248, 256 (1972); 3A *Wigmore* § 931. When counsel has failed to relate adequately the mental condition of a witness to the testimonial reliability of that witness and the relationship is not readily apparent, evidence of the witness' mental health should be excluded. *See Johnson v. People,* 171 Colo. 505, 468 P.2d 745, 748 (1970); *People v. Norwood,*

Colo.App., 547 P.2d 273, 279–80 (1975); *Commonwealth v. Towber,* 190 Pa.Super. 93, 152 A.2d 917, 920 (1959); *see also State v. Renneberg,* 83 Wash.2d 735, 522 P.2d 835, 836 (1974) (no foundation establishing relevancy of drug addiction); *Chapin v. State,* 78 Wis.2d 346, 254 N.W.2d 286, 290–91 (1977) (evidence of prior intoxication held inadmissible without foundation).

■ In the instant case counsel for the appellant failed to demonstrate any relationship between any psychiatric consultations by Mrs. Harvey and her ability to perceive, recall or relate the facts to which her testimony pertained.[1] No relationship was immediately apparent. The presiding justice did, however, allow counsel for the appellant to inquire about the witness' use of drugs during the pertinent periods. In ruling as he did on these two matters, the presiding justice was correct and acted within the scope of his discretion.

## II

Prior to trial appellant alleged in an affidavit the existence of records held at the B.M.H.I., which pertained to the treatment of Judy Harvey for a "nervous condition by Dr. Jollie of Bangor." Appellant moved for discovery of these records pursuant to M.R.

---

1. Counsel's offer of the psychiatric consultation evidence was limited to the following discussion:

    [DEFENSE COUNSEL]: Whether she's presently treating with a psychiatrist and has been . . . .

    \* \* \* \* \* \*

    [STATE'S ATTORNEY]: I'm going to object to any question about whether or not she's consulted with a psychiatrist.

    [DEFENSE COUNSEL]: It would be our contention, your Honor, that any matter which would tend to affect the creditability of a witness, including the condition of the witness, her ability to recall, her ability to understand reality, is just—they are just a few of the many ways in which cross examination may be utilized with the hope of questioning the credibility of the witness . . . .

    THE COURT: Well, I think I'll exclude that question. You're protected on that in the record. And if I'm wrong, they'll explain it to me, but I just think that's wrong.

    [DEFENSE COUNSEL]: Both, your Honor?
    THE COURT: No, psychiatrist.
    [DEFENSE COUNSEL]: Okay.
    THE COURT: Use of drugs at that time to show here whether she could remember things or was aware of what was going on and so forth, that's proper. But going to see a psychiatrist, that's a personal matter, could be done for any reason. And to assume that that would be something that affects a person's ability to testify would be—that would be a rather ignorant assumption that I'm afraid a lot of people would make; and therefore, I just wouldn't ever let anybody ask that—
    [DEFENSE COUNSEL]: What I was wondering, your Honor—
    THE COURT: (Continuing)—in a case like this.
    [DEFENSE COUNSEL]: (Continuing)—if I could inquire into it in the absence of the jury to determine whether we could—
    THE COURT: Not at this stage of the game.

Crim.P. 16(a)[2] and 34 M.R.S.A. § 1.[3] On appeal the appellant claims that the denial of his discovery motion was error.

The basis for appellant's motion is his contention that the records of B.M.H.I., which is a division of the Maine Department of Mental Health and Corrections (34 M.R.S.A. § 1), were, for the purposes of Rule 16(a), "*within the possession, custody, or control of the state.*"

We disagree with the premise of appellant's argument.

■ It is unrealistic to require the attorney for the State to be responsible for the production of *any* materials not within his possession or the possession of his office but filed elsewhere in some unrelated department of state government. The intendment of Rule 16(a) was never to cause attorneys for the State to ferret out material that is equally available (or unavailable) to all parties. Rather, the function of Rule 16(a) was to make available upon motion material within the office of the attorney for the State. *State v. Toppi*, Me., 275 A.2d 805, 812 (1971).

The present Rule 16(b), promulgated to be effective January 3, 1978, reveals the cogency of this:

(b) Discovery Upon Request.

(1) *Duty of the Attorney for the State.* Upon the defendant's written request, the attorney for the State, except as provided in subdivision (3), shall allow access at any reasonable time to those matters specified in subdivision (2) *which are within the attorney for the State's possession or control.* The attorney for the State's obligation extends to matters within the possession or control of any member of his staff and of any official or employee of this State or any political subdivision thereof who regularly reports or with reference to the particular case has reported to his office. In affording this access, the attorney for the State shall allow the defendant at any reasonable time and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made.

(emphasis supplied). The use of phraseology that limits permissible discovery to matters "which are within the attorney for the State's possession or control" more accurately reflects the intended parameters of the criminal discovery rule.

■ The ruling justice, therefore, correctly denied the appellant's motion for discovery of material that was as accessible to the appellant as to the attorney for the State. *See State v. Burnham*, Me., 350 A.2d 577, 579 (1976); *State v. Boyajian*, Me., 344 A.2d 410, 413 (1975); *State v. Toppi, supra.*

### III–A

■ The State introduced over appellant's objection the testimony of one Harold Smith. The substance of this testimony

---

2. At the time of defendant's motion for discovery, M.R.Crim.P. 16(a) read as follows:

(a) Discovery and Inspection. Upon timely motion of a defendant and *upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable*, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents, or tangible objects *which are within the possession, custody, or control of the state*, including written or recorded statements of confessions made by the defendant or a co-defendant, written or recorded statements of witnesses, transcripts of the testimony of witnesses before the grand jury, and the results or reports of physical examinations and scientific tests, experiments, and comparisons. The order shall specify the time, place, and manner of making the inspection and of taking the cop-

ies or photographs and may prescribe such terms and conditions as are just.

(emphasis supplied)

3. § 1. Administration; personnel

The *Department of Mental Health and Corrections*, as heretofore established, hereinafter in this Title called the 'department,' *shall have general supervision, management and control of* the research and planning, grounds, buildings and property, officers and employees, and patients and inmates of all of the following state institutions: The *hospitals for the mentally ill*, Pineland Center, the State Prison, the Maine Correctional Center, the Maine Youth Center, the Military and Naval Children's Home and such other charitable and correctional state institutions as may be created from time to time.

(emphasis supplied).

was that approximately three weeks before the Bettencourt slayings he, along with the appellant and two others, had attempted to rob Mr. Bettencourt. Mr. Smith recited in detail the plan to cut the telephone line leading to the house, the use of a shotgun, an "Automatic" pistol and a .22 caliber revolver, and Heald's knowledge of Mr. Bettencourt, his home and his store.

Appellant first contends that the only actual purpose served by the evidence of his participation in the earlier robbery attempt was to demonstrate, because of his prior conduct, his propensity to commit the crime in question. Since M.R.Evid. 404(b) does not permit the use of evidence of other crimes to show that a defendant acted in conformity therewith, the admission of evidence with only that probative value would constitute reversible error.

We believe it evident, however, that the testimony of Mr. Smith was probative of the issues of design, motive, knowledge, and identity. This prior attempt demonstrated the existence of a scheme in which Heald participated. Although the plan failed, its existence has probative value. Obviously the details of the attempted crime tend to show that robbery was the motive for the slayings and also reveal the appellant's knowledge of the Bettencourts, their home and store, and Mr. Bettencourt's habit of carrying large sums of money and a gun. Finally, the planned method accomplishing the robbery, the time, place, guns to be utilized, and cutting of the outside telephone line, is sufficiently unique to be probative of the identity of those persons who eventually committed the murders. The testimony, therefore, was not impermissibly introduced solely to reveal a prior crime by the appellant and to demonstrate his propensity to act in conformity therewith.

■ Merely because evidence reveals the commission of another crime is not a sufficient reason in itself to exclude that evidence. It may be admissible if it is probative of some element of the crime for which the defendant is being tried. See State v. Cugliata, Me., 372 A.2d 1019, 1029–30 (1977); State v. Gagne, Me., 343 A.2d 186, 195 (1975).

Evidence revealing other crimes is admissible if it casts light upon the character of the act for which the defendant is being prosecuted by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried.

State v. Eaton, Me., 309 A.2d 334, 338 (1973).

### III–B

■ Appellant's next contention is that the unfair prejudice of the testimony outweighed its probative value and thereby necessitated exclusion. See M.R.Evid. 403. As we have already stated, a presiding justice, present at the proceedings and occupying a superior vantage point from which to weigh the probable effects of certain evidence, has broad discretion in ruling upon the inadmissibility of evidence because of unfair prejudice. See State v. Hurd, supra; State v. Gagne, supra. Our review of the trial justice's ruling, therefore, is confined to a search for abuse of discretion.

The mere harmfulness of certain evidence to a litigant's case is not what is meant by unfair prejudice. State v. Hurd, supra at 527 n.5. Field and Murray, § 403.1, quoting McCormick's Handbook on the Law of Evidence, § 185, n.31 (2d ed., E. Cleary ed. 1972).

■ Appellant contends that the potential was great that jurors would decide his guilt based upon his prior crimes. In contrast, however, the availability of other evidence, according to appellant, caused Mr. Smith's testimony to be merely cumulative in the proof of the character of the act, motive, identity and intent. In weighing these factors the presiding justice, attempting to carefully guard against unfair prejudice, should have resolved any doubt regarding the admissibility of the evidence in favor of the appellant. 29 Am.Jur.2d, Evidence § 321.

■ We do not believe that the presiding justice abused his discretion. Mr. Smith's testimony was used to prove issues important to the State's case. His testimony had high probative value. Proof of many of these issues was otherwise circumstantial, less than irrebuttable, or non-existent. Mr. Smith's testimony was not used merely to prove a tangential but material issue nor to demonstrate once again a strongly supported point. Moreover, the presiding justice instructed the jury to limit its consideration of the prior crime to aiding them in the determination of the "issues of intent, knowledge, identity, plan, scheme or motive of the defendant."

### IV

Having been indicted on October 27, 1976, the appellant filed a request pursuant to 34 M.R.S.A. § 1391 [4] for the immediate disposition of untried indictments. The prosecuting attorney received this request on November 2, 1976. The 180-day period within which the appellant was to have been brought to trial, therefore, began on November 2nd and was to have expired on May 2, 1977. The State filed a motion on April 20, 1977, to continue the trial date until May 16, 1977. The appellant contends that in granting the motion the ruling justice did so without good cause and thereby erred. We disagree.

■ The generally applicable criteria for review of the granting of a continuance are whether the ruling justice abused his discretion and whether the party asserting the abuse has shown "palpable error" or "apparent injustice." *See State v. Sim-*

monds, Me., 313 A.2d 120, 122 (1973); *State v. Carey*, Me., 303 A.2d 446, 449 (1973); *State v. Curtis*, Me., 295 A.2d 252, 254 (1972). The legislatively recognized right of the appellant to be brought to trial within 180 days, however, must also be weighed in this formula. *See* 34 M.R.S.A. § 1391.

As grounds for a continuance the prosecuting attorney informed the court of his involvement in an unrelated matter and the inability to schedule a trial in Penobscot County before the last week in April. Since we decide this issue on another basis, it is unnecessary to determine whether the State thereby offered sufficient *"good cause"* to justify a continuance. We are not unmindful, however, of decisions in other jurisdictions where the legislature has not been allowed to blow hot and cold at the same time by mandating a trial within 180 days but failing to provide for sufficient court facilities. *See Commonwealth v. Ray*, 240 Pa.Super. 33, 360 A.2d 925 (1976); *Commonwealth v. Shelton*, 239 Pa. Super. 195, 361 A.2d 873 (1976).

■ We base our decision in this case upon our conviction that delay occasioned by a defendant or his counsel is good cause for continuance.[5] A defendant should not be able to claim that the State is dilatory in bringing him to trial while he is constructing obstacles that the State must overcome in order to get his case to trial.

In the instant case the appellant himself on November 5, 1976, and within the 180-day period, asked for an extension of time within which to obtain counsel. Twenty-four days later appellant still had not retained counsel, and with the court's assist-

---

**4.** § 1391 Procedure

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this State, and whenever during the continuance of the term of imprisonment there is pending in this State any untried indictment, information or complaint against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting official of the county in which the indictment, information or complaint is pending, and the appropriate court, written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. For *good cause shown in open court*, the prisoner or his counsel being present, *the court having jurisdiction of the matter may grant any necessary or reasonable continuance.* . . . (emphasis supplied).

**5.** The Pennsylvania criminal rule that is analogous to 34 M.R.S.A. § 1391 mandates the exclusion from the calculation of the statutory time limit any delay resulting from the unavailability of the defendant or his attorney. Pa.R.Crim.P. 1100(d)(1).

ance his present counsel was obtained on November 29th. Appellant also moved for a change of venue from Waldo County, which motion the State opposed but, after an evidentiary hearing on March 14, 1977, the motion was granted. At that time less than seven weeks of the 180-day period remained.

We conclude that the justice appropriately considered the delay of the appellant in arranging for counsel, the delay involved in the appellant's motion for a change of venue, and the admitted absence of any unfair prejudice [6] in the grant of a 14-day extension. There was no abuse of discretion in granting the motion for a two-week continuance.

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY and NICHOLS, JJ., did not sit.

---

**6.** At the conclusion of the hearing on the motion to continue, the appellant presented a motion for discovery, which is evidence that the appellant might have been assisted by the two-week delay.