STATE of Maine

v.

William FORBES.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1982.

Decided May 6, 1982.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty. (orally), Portland, for plaintiff.

Kettle, Carter, Hannigan & Vickerson, William L. Vickerson, Portland, Berman, LeBlanc, Pallas & Clark, Ray R. Pallas (orally), Westbrook, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

Following a jury trial in Superior Court, the defendant was convicted of committing robbery while armed with a dangerous weapon in violation of 17–A M.R.S.A. § 651(1)(B) and (E). The defendant has timely appealed.

On December 16, 1980, between 10:15 and 10:30 p. m., a man wearing a hat that covered his entire head with holes cut out over the areas of his eyes and mouth entered Terroni's Market on Park Avenue in Portland. Ms. Stephanie Strickland and Mr. Peter Marong were then working at the market. Strickland testified at trial that the man was carrying either a shotgun or a rifle. She gave no description of the weapon. Marong testified that the man carried a rifle with a light brown stock and a pink shoulder rest located at the end of the stock. His description of the events of the robbery indicate that he saw only the rearmost portion of the gun. The man told Marong to lie down on the floor or get shot. He told Strickland to open the cash register and give him any money and food stamps in it. Both complied. Strickland testified that she recognized the man at that time as a past customer in the store.

On December 18, 1980, at a photo line-up conducted by the investigating police officers, Strickland picked out a photo of the defendant from among a total group of six photos and identified that photo as a photo of the robber. She also identified the defendant at trial as the robber. Detective Kelly, the officer who conducted the photographic line-up, testified that Strickland identified a photo of the defendant in that line-up as "the man that robbed the store."

Officer Demakis of the Portland Police Department responded to a radio dispatch concerning the robbery within minutes of its occurrence. On his way to Terroni's Market he saw the defendant outside of 185 Grant Street (a location within 75 yards of Terroni's Market) putting out some rubbish.

On December 18, 1980, Demakis arrested the defendant in an apartment at 185 Grant Street where he was lying face down on a bed. Under his hand, which dangled off the edge of the bed, was a gun barrel protruding from an open box situated under the bed. The gun, a 12 gauge pump shotgun, was seized. Demakis was permitted to identify State's Exhibit 2 over the defendant's objection for lack of authentication and unfair prejudice, as consisting of the gun that was seized in the box in which it was found. Demakis gave the gun to Officer Wallace of the Portland Police Department who took it to the police station. Wallace identified Exhibit 2 as the shotgun he obtained from Demakis. Wallace gave the gun to Officer Mowatt, who locked it up in the lab. Officer Kierstead performed certain tests on the gun and dusted it for fingerprints. He identified Exhibit 2 as the gun on which he had performed those functions. After these Officers testified, Exhibit 2 was admitted into evidence over the defendant's general objection.

The defendant presented three witnesses who testified that the defendant had been very drunk on December 16, 1980, and that he had passed out or was asleep in his girlfriend's apartment at 185 Grant Street when the robbery occurred. The defendant's girlfriend testified that the shotgun belonged to her and that she had never loaned it to the defendant.

The day before the trial, the defendant moved for an order *in limine* to exclude from the jury's view Exhibit 2 on grounds of lack of foundation and unfair prejudice. The motion was denied after hearing.

The sole issue raised by the defendant on this appeal is whether "the trial court erred in overruling the defendant's objection to the admission of an exhibit which had not been properly authenticated." Authentication of exhibits is governed by M.R.Evid. 901. That rule states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence *sufficient to support a finding that the matter in question is what its proponent claims.*" M.R.Evid. 901(a)

(emphasis added). Thus, to determine the controversy as to authentication of the gun in this case, we must look to the record to determine what the proponent, here the State, claimed the gun to be. The gun was first produced at trial during the testimony of Officer Demakis. The officer had testified at that point about seeing the defendant "putting out rubbish" in front of 185 Grant Street in Portland shortly after receiving a radio dispatch that a robbery was in progress at Terroni's Market on December 16, 1980, and that that location is nearby to Terroni's Market.[1] The officer had testified that two days later he executed arrest warrants against the defendant in an apartment at that same location and that he found the defendant apparently sleeping on a bed in that apartment.[2] He described the defendant as lying face down on a bed with one hand "draped over the side of the mattress" so that it was 18 to 20 inches from the floor. He said that "directly under" that hand he observed a gun barrel sticking out of a partially open box located under the bed. He removed the gun and found it to be a pump shotgun.

At that point in his testimony, Officer Demakis was shown the shotgun and box identified as Exhibit 2. An objection by defense counsel to the exhibition of the gun was overruled. The basis of the objection was then stated to be that "there's no foundation that's been laid whatsoever for the gun being introduced—or being shown to Mr. Demakis. And I believe it can only unfairly prejudice my client." The officer then identified the gun and box making up the exhibit as "the same box and the same gun that I took that night . . . [from] [u]nderneath the bed."

▪ We view the defendant's objection as dual in scope; first, it raises the question of proper authentication of the exhibit, M.R.Evid. 901, and secondly, it raises the issue of whether its relevancy was substantially outweighed by any unfairly prejudicial character of the exhibit, M.R.Evid. 403. As to the first question, that of authentication, defendant's objection is based upon an erroneous focus on what the State claimed the gun to be. Both at trial and in written and oral argument on appeal, the defendant has founded his authentication argument on the assumption that the gun was explicitly offered in evidence as the very gun seen by Strickland and Marong at the time of the robbery. Such is clearly not the case. The context of the examination of Officer Demakis on the point shows clearly that the gun was offered *as that gun found by Demakis under the bed at the time of the defendant's arrest.* He identified it as such. No effort was made at that time to obtain testimony from him tying the gun to that used in the robbery. The gun was not claimed to be the actual gun used in the robbery. The determination of that question was left, in the context of the State's offer, to be made by the jury. It was claimed only to be that gun found by Demakis at the time of the defendant's arrest. It was authenticated by Officer Demakis as that gun. His testimony was clearly, in the words of M.R.Evid. 901(b)(1), "[t]estimony of a witness with knowledge that a matter is what it is claimed to be," *i.e.,* the gun found at the time of the defendant's arrest. If a proper focus is taken upon what the gun was claimed to be at the time of its introduction, it was properly authenticated. See *Terrio v. Millinocket Community Hospital,* Me., 379 A.2d 135, 137–38 (1977).

▪ The second prong of defendant's objection raises, as we have noted, the question as to whether the gun should have been found inadmissible because its probative value was "substantially outweighed" by a danger of "unfair prejudice" resulting

---

1. Officer Demakis testified that the distance between the two locations is 50 to 75 yards "if you cut through the yards." He also stated that the time to travel that distance would be "a matter of a minute." He also said the distance between the locations could be traversed in ". . . maybe a couple of minutes" by "going around the long way."

2. Officer Demakis testified that the defendant was arrested pursuant to two warrants of arrest then in Demakis' possession. The record reflects no challenge in the trial court to the lawfulness of the issuance of the arrest warrants. Defendant has made no such challenge on this appeal.

from its admission in evidence. In order to validly overrule that objection, the trial judge was required to make two factual determinations. These were: (1) whether the gun had any probative value to establish the State's case against the defendant if it was what it was claimed by the State to be (*i.e.*, a gun found under the bed on which defendant was asleep at the time of the arrest); (2) if relevant, that is having any probative value, whether any danger of unfair prejudice that arose from the gun's admission into evidence "substantially outweighed" the gun's probative value. We review such determinations under M.R. Evid. 401 and 403, on the basis of whether the trial court abused its discretion either in finding the evidence relevant, *State v. Gagnon*, Me., 383 A.2d 25, 31 (1978), or in finding that its potential for unfair prejudice did, or did not, substantially outweigh its probative value. *State v. Heald*, Me., 393 A.2d 537, 542 (1978).[3]

To be admissible, the proffered evidence must be relevant, that is, it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.Evid. 401. Here, the State, by introducing the gun into evidence, evidently intended to create the inference that it was the defendant who committed the crime because he was later found to be in possession of a weapon meeting the general description of that used in the commission of the theft. If that inference may rationally be drawn from the evidence, the gun is relevant to the issue of identification. It is crucial to proper analysis that it be recognized that the central issue to be resolved is the identification *of the defendant*, not the identification *of the gun*. *See United States v. Robinson*, 560 F.2d 507, 512 (2nd Cir. 1977), *cert. denied* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). The latter

issue must be effectively resolved by the jury as a foundational premise for the inference. It is the circumstantial nature of the likeness of the physical exhibit to the description of the gun given by the witnesses to the robbery which would permit the jury to resolve that issue against the defendant.

Courts of other jurisdictions which have considered the probative value of weapons found in the defendant's possession subsequent to the commission of a crime do not require direct and unequivocal foundational proof on the issue of identification that the weapon found in the defendant's possession was in fact the one used to facilitate the commission of the crime. *See, e.g., United States v. Green*, 561 F.2d 423, 425–26 (2nd Cir. 1977), *cert. denied* 434 U.S. 1018, 98 S.Ct. 739, 54 L.Ed.2d 764 (1978); *United States v. Robinson*, 560 F.2d 507, 512 (2nd Cir. 1977), *cert. denied* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *Holland v. State.* —— Ind., ——, ——, 412 N.E.2d 77, 80 (1980); *State v. Nicholas*, 397 So.2d 1308, 1318 (La.1981); *Commonwealth v. Cook*, 364 Mass. 767, 771, 308 N.E.2d 508, 511 (1974); *Commonwealth v. Mendes*, 361 Mass. 507, 514, 281 N.E.2d 243, 248 (1972). Rather, as a predicate to the admissibility of the weapon, the evidence must establish only that it "might have been used in the commission of the crime charged," *Mendes*, 361 Mass. at 514, 281 N.E.2d at 248, that "it is more probable than not that the object is the one connected with the case," *Nicholas*, 397 So.2d at 1318, or that the weapon found in the defendant's possession is "similar" to that used in committing the crime, *Walker v. United States*, 490 F.2d 683, 684 (8th Cir. 1974). Relevance can be attributed to the evidence in this situation, therefore, only if the gun, under all of the circumstances, could rationally be taken by the jury as tending to prove that the weapon found

---

**3.** A noted commentator suggests that the better standard for applying Rule 403 is that the trial court should give the evidence its maximum reasonable probative force and its minimum prejudicial value when determining whether the prejudice potential outweighs the probative value of evidence. 1 Weinstein, *Evidence* ¶ 403[03] (1975). Maine follows a different standard requiring that the trial court should resolve any doubt regarding the admissibility of evidence in favor of the defendant. *State v. Heald*, Me., 393 A.2d 537, 542 (1978) (discussing Rule 403).

with the defendant and the weapon used during the crime are one and the same and that the availability of the gun to the defendant tends to make it more likely than not that he committed the robbery. In the absence of circumstances which would permit the trier of fact to find that the weapon possessed by the defendant was likely to be that used in the crime, the weapon could carry no probative weight as to the thief's identity and would thereby be inadmissible under M.R.Evid. 402. *See Walker*, 490 F.2d at 684; *Morris v. State*, —— Ind.App. ——, ——, 397 N.E.2d 1056, 1057 (1979).

█ In the case at bar, neither Strickland nor Marong, the only witnesses present at Terroni's Market during the commission of the theft, was asked whether Exhibit 2, the weapon found in the defendant's immediate possession at the time of his arrest, resembled the weapon used by the accused to facilitate the crime. Yet, at trial, Stephanie Strickland testified that the culprit carried a shotgun or a rifle, not a handgun, when he committed the armed theft. Peter Marong stated that the weapon had a light brown stock with a "pink" shoulder rest. We have examined the gun, admitted into evidence as State's Exhibit 2, and we conclude that the trial justice did not abuse his discretion in ruling that the weapon is probative on the issue of identification of the defendant, because the weapon, discovered within the defendant's possession at the time of his arrest, could also be found on the basis of Strickland's and Marong's testimony to be the one used in the commission of the offense. Such a finding is further buttressed by the fact that the defendant was seen within moments of the commission of the robbery in front of the location where both he and the gun were later found. That location was nearby to the scene of the robbery.

█ Having concluded that the trial justice properly attributed some degree of relevance to the weapon as offered into evidence, we must next consider whether, as the defendant is seen to assert, "its probative value is substantially outweighed by the danger of unfair prejudice." M.R.Evid.

403. Of course, "prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *State v. Hurd*, Me., 360 A.2d 525, 527 n.5 (1976), *quoting* McCormick, *Handbook on the Law of Evidence* § 185 at 439 n.31 (2nd ed. 1972). Thus, the word "unfair," used as a modifier of "prejudice" in the rule, has operative content for purposes of our inquiry on this point.

Although the defendant has failed to articulate the manner in which he claims to have been prejudiced, several forms of unfair prejudice have been associated with the introduction of physical evidence such as weapons. Those forms include the possibility of the drawing of an inference of the truth of all propositions predicated on that evidence or the loss of a rational perspective on the issues at trial from the mere sight of the weapon, 4 Wigmore, *Evidence* § 1157 (Chadbourne rev. 1972); McCormick, *Handbook on the Law of Evidence* § 212 (2nd ed. 1972); and the possibility that the defendant will be considered a dangerous person and one likely to commit an armed theft, merely because of his possession of a gun, *Robinson*, 560 F.2d at 513.

█ As the presiding justice stood in a position superior to that of this Court in reviewing and balancing the factors that are involved in a rule 403 determination, we review only for . an abuse of discretion. *Heald*, 393 A.2d at 542. Further, on this review, the appellant shoulders the burden of demonstrating such an abuse. *State v. Poland*, Me., 426 A.2d 896, 898 (1981). We find no abuse in the court's determination, necessary to the admissibility of the proffered evidence under rule 403, that any unfair prejudice generated by it did not substantially outweigh its probative value.

The issue of the perpetrator's identification was clearly a significant one in this case. This factor operates to enhance the

probative value of any evidence tending to show that the defendant was or was not responsible for the crime. *See Poland*, 426 A.2d at 898; Field and Murray, *Maine Evidence* § 403.1 (1976). *Cf. State v. Conner*, Me., 434 A.2d 509, 512 (1981) (gruesome photograph). On the other hand, because no one was injured and because the gun was not discharged in the course of the theft (indeed, Strickland agreed on cross-examination with the defense counsel's statement that "[i]t was kind of a friendly robbery . . ."), the dangers that the sight of the weapon would overwhelm the jury's reason or that the jury would unquestioningly believe in the truth of all propositions predicated on that evidence could be regarded by the court as remote. Further, the likelihood that the jury would draw from the defendant's possession of the firearm an improper inference about his character and propensity to commit such a crime is ameliorated somewhat by the uncontradicted testimony that Exhibit 2 did not belong to him.[4] Viewing the content of the rule 403 variables in this light, we conclude that the presiding justice did not abuse his discretion in ruling that the probative value of Exhibit 2 was not substantially outweighed by the danger of any unfair prejudice.

The entry is:

Judgment affirmed.

All concurring.

---

**4.** A limiting instruction was available to the defendant to restrict this evidence to its proper scope. M.R.Evid. 105. We assume that the defense counsel's failure to seek such an instruction was deliberate and grounded in strategy. *See State v. Rogers*, Me., 389 A.2d 36, 38 (1978).