STATE of Maine

v.

Jerald JOHNSON and Dominic Profenno.

Supreme Judicial Court of Maine.

Argued Nov. 23, 1983.

Decided March 2, 1984.

Charles K. Leadbetter, Frederick C. Moore, Anita M. St. Onge (orally), Michael N. Westcott, Pasquale, J. Perrino, Asst. Attys. Gen., Augusta, for plaintiff.

Alan R. Nye (orally), Portland, for Jerald Johnson.

Law Offices of Daniel Lilley, E. Paul Eggert (orally), Portland, for Dominic Profenno.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Defendants Jerald Johnson and Dominic Profenno appeal from their respective convictions of murder and attempted murder, 17-A M.R.S.A. §§ 201, 152, resulting from a jury trial in Superior Court (Cumberland County). On appeal, they argue that the presiding justice committed error in 1) denying a motion by Profenno to sever the two trials, 2) excluding testimony by the defendants' roommate regarding a possible inference from silence, 3) admitting into evidence three knives discovered in defendants' apartment, and 4) excluding a tape recording of a conversation between Johnson's attorney and the defendants' roommate. They also contend that certain prosecutorial remarks made during closing and rebuttal arguments were improper and defendant Johnson argues that the evidence was insufficient to sustain a judgment of conviction against him. We find the assignments of error to be without merit and further conclude that the evidence with regard to defendant Johnson was sufficient to support his conviction. We therefore affirm the judgments.

On the night of June 5, 1982, defendants Johnson and Profenno became engaged in an altercation with two other men, James Leo and Gerald Woods, in the vicinity of "Chuck's Tavern" on Cumberland Avenue in Portland. Leo testified that he had started drinking beer at Chuck's that day at about 12:30 p.m. At about 9:30 p.m. he left the tavern and encountered Woods who was standing outside the tavern and appeared to be arguing with defendant Johnson. Profenno was standing some distance away.

Shortly thereafter Johnson and Profenno began walking down Cumberland Avenue with Woods and Leo following. According to Leo, at a distance of some 40–50 yards from the tavern, Johnson turned to Woods and said, "Let's go for it. You're a big man, let's go for it." Woods chased Johnson a short distance and began grappling with him at which point Leo sought to separate the two. As he reached between them he felt a blow to his chest, and turned to see Profenno running away. He later testified that the blow, which turned out to be a stab wound, could only have been administered by Profenno.

In the meantime, Woods received stab wounds to the heart, spleen, and chest wall. Leo testified that he did not see Woods get stabbed, but turned to find him lying on the ground. Leo then ran back toward the tavern to seek help and later testified that he saw Jerald Johnson chasing him with a knife. Both victims were later taken to the Maine Medical Center, where a short time later, Woods died from his wounds. The defendants were arrested, and on July 8, 1982, a two count indictment was returned charging each defendant with murder and attempted murder. Upon arraignment, Johnson and Profenno entered pleas of not guilty. On January 27, 1983, after a three day jury trial, verdicts were returned finding defendant Johnson guilty of murder and defendant Profenno guilty of attempted murder. Each defendant was acquitted of the other charge. Both defendants appealed their convictions to the Law Court, where the appeals were consolidated.

I.

A court may order separate trials of codefendants if it appears that a defendant or the state may be prejudiced by a joint trial. M.R.Crim.P. 14.[1] Defendant Profenno filed a pretrial motion for severance claiming that a joint trial would prejudice

---

1. "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." M.R. Crim.P. 14.

him in three ways: 1) a statement incriminating Profenno, made by Johnson to their roommate could present "Bruton" problems;[2] 2) if his codefendant testified and incriminated him, Profenno's tactical option to assert his privilege against self-incrimination would be compromised; and 3) he would be unable to prepare an adequate defense since discovery rules do not compel codefendants to disclose evidence to one another. Defendant Johnson did not join in the motion.

As a general prudential rule, joint trials are favored because they conserve judicial resources by avoiding duplicative trials, the needless repetition of evidence, and the added expense and delay of separate trials. *State v. Bradley,* 414 A.2d 1236, 1239 (Me.1980); *State v. Anderson,* 409 A.2d 1290, 1297 (Me.1979). Although, in the interests of justice, Rule 14 is to be liberally construed, *see* 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 14.1 at 120 (1967), the disposition of a motion to sever is within the sound discretion of the presiding justice, and on appeal, his ruling will only be reviewed for abuse of discretion. *State v. Doody,* 434 A.2d 523, 525 (Me.1981); *Bradley,* 414 A.2d at 1239.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that, when incriminating extrajudicial statements are made by one codefendant against another, their admission into evidence may be seriously prejudicial, and this by itself may provide a reason for separate trials. *Id.* at 136. In *State v. Wing,* 294 A.2d 418 (Me.1972), we discussed the *Bruton* decision at length, noting that the distinguishing feature in *Bruton* was that "[t]he confessing codefendant did not take the witness stand and thus no opportunity to cross-examine him was afforded." 294 A.2d at 421. Consequently, the decision in *Bruton* turned upon the requirements of the Confrontation Clause. *Id.; see also Bruton,* 391 U.S. at 131–35, 88 S.Ct. at 1625–1627. Here, not only was Johnson a witness at trial at which he was cross-examined by counsel for Profenno but the extrajudicial statement made by Johnson was never received in evidence.

As for Profenno's other assertions, we have stated that

the party moving for severance bears a significant burden: "The appellant must make a clear showing of facts presented to the trial justice prior to trial which should have caused him to believe that the defenses of appellant and his codefendant were necessarily antagonistic or that he would be prejudiced by a joint trial".... Vague generalizations of potential prejudice are insufficient to warrant severance.

*State v. Smith,* 415 A.2d 553, 556 (Me.1980) (quoting *State v. Millett,* 392 A.2d 521, 528 (Me.1978)). No such "clear showing" was ever made before the motion justice; nor does Profenno state with any specificity on appeal just how his joinder with Johnson impeded his preparation of an adequate defense. At most, his position amounts only to a "[v]ague generalization ... of potential prejudice," *Smith,* 415 A.2d at 556, which fails to demonstrate the "palpable error or apparent injustice" necessary to a showing of abuse of discretion. *State v. Tracy,* 415 A.2d 824, 826 (Me.1980) (citing *State v. Simmonds,* 313 A.2d 120, 122 (Me. 1973)).

II.

Appellant Johnson challenges the court's exclusion of certain testimony by Edward Adams, an individual who resided with the defendants in their Congress Street apartment. During questioning, Adams testified that he was present in the apartment when Profenno and Johnson returned on the night of the stabbings. Johnson allegedly told Adams that Profenno had stabbed someone. Although Adams testified that Profenno was in a bathroom adjoining the room where the conversation took place, and may have had the water running, Ad-

---

**2.** *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

ams nevertheless testified that he believed Profenno had overheard the remark and had made no reply. Johnson argued then, as he does on appeal, that the remark was not subject to exclusion under the hearsay rule, M.R.Evid. 802, because it constituted an "adoptive admission." M.R.Evid. 801(d)(2)(B). The trial court ruled that it was not an adoptive admission and excluded the testimony.

■ M.R.Evid. 801(d)(2)(B) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement of which he has manifested his adoption or belief in its truth . . . ." Based on the evidence, the presiding justice could well have found that Profenno did not hear Johnson's remark. Since Profenno could not have manifested his adoption or belief in the truth of a statement of which he had no knowledge, M.R.Evid. 801(d)(2)(B) was inapplicable and the statement was properly excluded as hearsay pursuant to M.R.Evid. 802.

### III.

■ Both defendants appeal the admission into evidence of three knives discovered in their Congress Street apartment, along with photographs of the knives. They argue that the State failed to establish a direct link between the knives and the stabbings on Cumberland Avenue, and that the evidence was unnecessarily cumulative. The evaluation of relevance and the exclusion of otherwise relevant evidence are within the sound discretion of the presiding justice. *State v. Forbes*, 445 A.2d 8, 11 (Me.1982); *see generally* M.R.Evid. 403. In ruling upon these issues, the court must make two separate determinations: 1) whether the evidence is relevant, that is, whether it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," M.R.Evid. 401; and 2) whether the evidence, though relevant, should be excluded on the grounds of prejudice, confusion, or waste of time, M.R.Evid. 403. *Forbes*, 445 A.2d at 11.

With regard to relevance, we have observed that

> The concept of relevance "rests upon rules of logic or common sense, not of law." Field and Murray, *Maine Evidence* § 401.1 at 53 (1976). Common sense suggests that one measures relevance in a continuum, and that at some stage evidence becomes so remote that its probative impact upon "the existence of any fact that is of consequence" is reduced to zero. When the probative impact reaches zero, the evidence is simply not admissible under Rule 402; but prior to that point, the admission of the evidence may be weighed against other factors under Rule 403.

*State v. Kotsimpulos*, 411 A.2d 79, 81 (Me. 1980). Using this analysis, the relevance of the knives discovered in defendants' apartment is unmistakeable. One can infer from the facts surrounding the incident that at least one knife was used in the attack on Woods and Leo. Johnson testified that Profenno had strapped "a double-edged diver's knife" to his leg before leaving the apartment, prior to the incident, and the pathologist who performed the autopsy on Woods stated that the wounds were probably caused by "a sharp instrument probably pointed and probably [having] two sharp edges."

■ Of the knives admitted into evidence, none were of the ordinary, household variety; all were described as "hunting knives, long bladed knives." One of the knives was double-edged, and bore traces of human blood. Although the blood was never traced to either of the two victims, we have held that "as a predicate to the admissibility of [a] weapon, the evidence must establish only that it 'might have been used in the commission of the crime charged,' " *Forbes*, 445 A.2d at 11 (quoting *Commonwealth v. Mendes*, 361 Mass. 507, 514, 281 N.E.2d 243, 248 (1972)), or that "the weapon found in the defendant's possession is 'similar' to that used in committing the crime."

*Forbes,* 445 A.2d at 11 (quoting *Walker v. United States,* 490 F.2d 683, 684 (8th Cir. 1974)). Evidence of this nature is relevant to show that defendants had the means to commit the alleged offense. *State v. Villafane,* 171 Conn. 644, 372 A.2d 82, 98 (1976); *Heard v. State,* 126, Ga.App. 62, 189 S.E.2d 895, 898 (1972); *People v. Rogers,* 23 Ill.App.3d 115, 318 N.E.2d 715, 719 (1974); *Commonwealth v. Clark,* 280 Pa.Super. 1, 421 A.2d 374, 376 (1980). *See generally Wharton's Criminal Evidence* § 157 (13th ed. 1972); see also cases cited in *Forbes,* 445 A.2d at 11. We find no error in the court's determination that the knives were relevant under M.R.Evid. 401 or in its determination that they should not be excluded on grounds of confusion or waste of time under M.R.Evid. 403.

Rule 403 also provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." However, as we noted in *State v. Heald,* 393 A.2d 537, 542 (Me.1978), "[t]he mere harmfulness of certain evidence to a litigant's case is not what is meant by unfair prejudice." By the mere assertion of prejudice in the court below, and a claim on appeal that "the introduction of the knives ... had the clear danger of diminishing the character of the defendants in the eyes of the jury," the trial court's determination that the defendants had failed to establish a danger of unfair prejudice of sufficient substance to outweigh the probative value of this evidence must remain undisturbed. Defendants also contend the evidence was unnecessarily cumulative, since testimony regarding discovery of the knives had already been admitted. Though this may be so, "[t]he only prejudice is that the physical object corroborates the testimonial evidence and therefore makes it more believable." *State v. Lagasse,* 410 A.2d 537, 541 (Me. 1980). Under the circumstances, we do not regard the knives or the photographs as needlessly cumulative or prejudicial so as to warrant exclusion under Rule 403.

## IV.

Defendant Johnson challenges the exclusion by the presiding justice of a taped conversation between Johnson's counsel and Edward Adams. Adams had visited the attorney shortly after the date of the stabbings, and in a taped conversation, indicated that Profenno had confessed to the crime. During questioning in the absence of the jury, Adams was unable to recall having made that statement in the earlier conversation. Counsel for Johnson then sought to introduce the tape as evidence, but the court excluded it. Johnson now argues, for the first time, that the tape should have been admitted for the limited purpose of refreshing Adams's recollection. M.R.Evid. 612.

Our review is governed by M.R. Evid. 103(a)(2), which provides that "[e]rror may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer or was apparent from the context. ..." An offer of proof enables the appellate court to determine whether the ruling adversely affected a substantial right of the party. *State v. Grant,* 417 A.2d 987, 989 (Me.1980). Here, defense counsel failed to state that he intended to use the tape to refresh the witness's recollection; nor did he seek to have it admitted as a recorded recollection, M.R. Evid. 803(5). From the context, it is clear only that he sought to introduce the tape in order to prove the matter asserted, which is clearly impermissible under Rules 801 and 802. We must therefore determine whether the ruling constitutes "obvious error." M.R.Evid. 103(d). Upon reviewing the circumstances surrounding this ruling, we cannot fault the presiding justice for taking the words of defense counsel at their face value. His ruling, far from constituting a "'clear miscarriage of justice,'" *State v. True,* 438 A.2d 460, 468 (Me.1981) (quoting M.R.Evid. 103 advisers' note), was entirely proper under the circumstances.

## V.

During his argument to the jury in rebuttal, the prosecuting attorney stated that "Mr. Leo gave a statement to the police right after he was released from the hospital. He didn't have weeks to think over how he was going to manufacture things." Counsel for both defendants objected and moved for a mistrial, but the court denied their motion. On appeal, Johnson and Profenno argue that the statement of the prosecutor constitutes an impermissible comment upon their pre-trial right to remain silent. A prosecutorial reference to silence by the accused may, under certain circumstances, require a new trial. *State v. Tibbetts,* 299 A.2d 883, 889 (Me. 1973); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Yet a prosecutor may "attack defendant's credibility by analyzing the evidence and highlighting absurdities or discrepancies in defendant's testimony, and may present his analysis in summation with vigor and zeal." *State v. Smith,* 456 A.2d 16, 17 (Me.1983).

The statement by the prosecutor in the instant case is far too oblique to come under the *Tibbetts* standard. In *Tibbetts,* we noted that

[i]mpermissible prosecutorial comment can never be deemed harmless error as a matter of law under either of two circumstances:

1. A direct, non-ambiguous and unequivocal prosecutorial comment on the failure of a criminal defendant to become a witness.

2. An indirect prosecutorial comment which, without equivocation or ambiguity, suggests that a jury must accept as true the State's evidence because it is

undenied by a criminal defendant as a witness.

299 A.2d at 889.[3] In proper perspective, the comment at issue must be seen to refer to the defendants' credibility, and not to their silence. It therefore falls within the bounds of permissible argument as delimited in *Smith.*

The prosecutor made a number of additional remarks during closing and rebuttal argument, of which the following is representative:

Now, in arriving at your decision, you have three versions of the events before you, the events of the night of June 5, 1982. Three versions which I suggest to you are mutually exclusive, cannot all be true. Only one of those versions is true. The other two are patently false.

Somewhat later, in recounting the testimony of defendant Johnson, the prosecutor remarked that "the story gets still stranger from there on in," and "here is where it gets even more unbelievable." No objection was registered at the time these statements were made. On appeal, defendant Johnson nevertheless contends that the remarks constitute error. We disagree.

In *State v. Smith,* we concluded it was error for the prosecutor to assert his opinion that the defendant was lying. The prosecutor had stated, *inter alia,* that "He [the defendant] gets caught lying and he can't even admit it," and "You tell [the defendant] he should be accountable for what he did . . . or you tell him its okay to lie." 456 A.2d at 17. The prosecutor's remarks in the present case share none of the egregious characteristics of the remarks in *Smith* and do not constitute error. Indeed,

---

**3.** We recognize that, since both defendants testified, the statement at issue could rationally refer, if at all, only to the defendants' pre-trial silence. While there is authority for the proposition that a defendant's right to remain silent is not confined to the courtroom, *Doyle v. Ohio,* 426 U.S. 610, 617–19, 96 S.Ct. 2240, 2244–2245, 49 L.Ed.2d 91 (1976), and that prosecutorial comment upon such silence may be constitutionally prohibited, *id.* at 618, 96 S.Ct. at 2245, there is also authority which states that the use

of pre-arrest silence to impeach a defendant's credibility does not violate his Fifth Amendment rights, *Jenkins v. Anderson,* 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980). Because we view the statement at issue here as too oblique to have affected a substantial right of either defendant, we need not address, nor do we intimate any opinion upon, the question of whether pre-arrest silence may be constitutionally protected in Maine.

they appear to be nothing more than a review of "absurdities or discrepancies in defendant's testimony," which cast an adverse light on his credibility. *Smith,* 456 A.2d at 17. *A fortiori,* the claimed error not having been preserved, applying the "obvious error" standard of review, we determine that the remarks constitute neither "obvious error," *State v. True,* 438 A.2d at 467, nor "argument ... so prejudicial, having such a strong tendency to produce manifest injustice, as to require reversal." *State v. Vigue,* 420 A.2d 242, 247 (Me.1980).

## VI.

 Defendant Johnson also attacks the sufficiency of the evidence against him. After reviewing the evidence in the light most favorable to the prosecution, *State v. Atkinson,* 458 A.2d 1200, 1205 (Me.1983), we determine that the jury rationally could conclude beyond a reasonable doubt that on the night of June 5, 1982, Johnson and Profenno left their apartment armed with at least one double-edged diver's knife and one blackjack between them. They encountered the victims, Woods and Leo, and an altercation ensued, the result of which left Woods mortally, and Leo critically, injured. Leo testified that as he ran back toward the tavern, he saw Johnson running after him and brandishing a knife, saying "I'm going to get you, too." We therefore find that the evidence against defendant Johnson was sufficient beyond a reasonable doubt to support a conviction for murder.

The entry is:

Judgments affirmed.

All concurring.