UNITED STATES of America, Appellee,

v.

James Melvin GREEN, Defendant-Appellant,

and

Debra Fennell Green, Defendant.

No. 630, Docket 76–1438.

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1977.

Decided Aug. 22, 1977.

Guy Miller Struve, New York City, for defendant-appellant.

T. Gorman Reilly, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., and Lawrence B. Pedowitz, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MANSFIELD, GURFEIN and MESKILL, Circuit Judges.

GURFEIN, Circuit Judge:

James Melvin Green ("Green") appeals from a judgment of conviction entered by the District Court (S.D.N.Y.) (Hon. Robert J. Ward) after a jury trial. Appellant and his wife, Debra, were tried jointly. Appellant was convicted on all five counts charging violations of 18 U.S.C. § 2113(a), bank robbery and attempted bank robbery, and with using a dangerous weapon during the course of a robbery in violation of 18 U.S.C. § 2113(d). Debra Green was convicted on three counts, and a mistrial was declared on Counts One and Two. Appellant was sentenced to concurrent terms of twenty years imprisonment on each of the three bank robbery counts. He was given a suspended sentence on the § 2113(d) counts, with a one-day probation imposed consecutive to the twenty-year period of incarceration. Only Green appeals.

The evidence showed that in early 1976, Mr. and Mrs. Green, acting as a team, participated in one bank robbery and two attempted bank robberies in mid-town Manhattan within 13 days.

On February 25, 1976 shortly after 11:30 in the morning, there was an attempted robbery at a branch of the Manufacturers Hanover Trust Company, located at 1185 Avenue of the Americas on West 47th Street. Three bank employees testified.

Charlene Churilla, the victim teller, related that during a relatively slow period of that day, two people—a man and a woman—appeared at her station. The woman presented a demand note which read: "We have a gun. Give us fifties and twenties." Rather than comply, Miss Churilla closed her cash drawer and attempted to engage the holdup team in conversation. She *clearly observed* that the male member of the team was holding a gun which he proceeded to place on the counter. The gun was aimed at Miss Churilla. At an opportune moment, some three minutes after first seeing the holdup team, Miss Churilla ducked down below the counter. When she got up again the man and woman had left. Miss Churilla identified Mr. and Mrs. Green as the two people who had attempted the bank robbery.

A second bank employee, Celinda Rivera, noticed the holdup team when she turned to answer the phone. She similarly described the scene, and identified appellant and Mrs. Green as the two persons who had attempted to rob the bank.

A teller, Gene White, supplied a similar account. His attention was caught by what appeared to be an exchange over a check between Miss Churilla and a female customer. He noticed that next to the woman there was a man holding a gun on the counter. The gun was pointing along the counter directly at White who was some 10 to 15 feet away. White positively identified Green as the man who was holding the gun.

Churilla, Rivera and White each testified that she or he pushed the alarm after observing the holdup team. As a result, the bank surveillance camera system was activated and a reel of film was exposed. Two photographs from the reel of film were introduced in evidence. Miss Churilla testified that these pictures accurately portrayed the male and female who attempted to hold her up on February 25th. By comparison of the photographs with the defendants before them, the jury could easily conclude that it was Mr. and Mrs. Green who were pictured in the photographs.

The second attempted bank robbery was at the First National City Bank at 40 West 57th Street on March 5, 1976. Miss Lilly Yu was the only eyewitness. A young black couple showed a note, announcing: "This is a stickup." When Miss Yu reached to push the alarm, the young couple panicked and left the bank.

Miss Yu stated that she did not observe the man and woman long enough to be able to identify them. However, she did describe the female as young, about 20 years of age, around 110 pounds, black, and about 5′3″ to 5′5″. She described the male as black, young, around 20, same height as the woman, 5′3″ to 5′5″, about 130 pounds, with a short hair cut.

By comparison of positives from the film of activated surveillance cameras with the defendants who were before them, the jurors could easily conclude that Mr. and Mrs. Green were the young black couple pictured heading toward the door of the bank shortly after Miss Yu hit the alarm.

On March 8, 1976, a branch of the National Bank of North America located at 515 Seventh Avenue near 38th Street was robbed. Donna Morrison, a teller, testified that her first customers after lunch were a black female and a black male. The woman held up a note which read: "This is a stickup. Give us all your money. We have a gun."

The black male pulled a gun from the inside of his coat and held it in his right hand. Miss Morrison complied by handing over $1400 from her top drawer. The holdup team then left the bank.

Because Miss Morrison failed to hit the alarm properly, the bank surveillance camera was not set off. Miss Morrison estimated that the black couple was at her counter for about two minutes. She identified, without hesitation, Mr. and Mrs. Green as the holdup team.

On March 12, 1976 at about 2:40 p. m., Detective Nora Palmer of the New York City Police Department was parked in an unmarked car on Broadway between 53rd and 54th Streets on surveillance. It was then that she observed James Green and Debra Green together, walking north on Broadway. She and her partner stepped out of the vehicle and placed the Greens under arrest.

James Green was found to be carrying a handgun in his pants; it was partially loaded, with three rounds of ammunition. When the couple was taken to a nearby police station, Mrs. Green was asked to empty the contents of her handbag. Detective Palmer found a Chemical Bank savings account withdrawal slip, bearing the handprinted message: "This is a stick up we have guns I went [sic] all the money don't push no button."

The court allowed the holdup note to be received in evidence *as to Mrs. Green only.* It allowed the gun, the holster, and the three bullets to be received *as to Green only.*

The defendants did not present any evidence. The defendant contends that the District Court abused its discretion in allowing the evidence to be received against him, asserting that the probative weight of the

exhibits was far outweighed by their prejudicial effect. The claim is without merit.

■ The reliability of the gun as evidence in the case on appeal is clear. Green was carrying it in the company of his wife who had in her handbag the handwritten note we have described. The gun is linked to the note. The note and gun, both of which were found in Green's constructive possession shortly after the events described in apparent pursuit of the common plan and scheme, are proof that Green was accustomed in robbing banks to using a gun in conjunction with a note. Its relevancy can hardly be doubted. Indeed we think Judge Ward was too generous in excluding the note in Mrs. Green's handbag so far as Green himself was concerned.

The relevance of this evidence clearly outweighs its potential for unfair prejudice. Fed.R.Evid. 403. *See United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970); *United States v. Robinson*, 560 F.2d 507 (2d Cir. 1977) (*en banc*).

■ Appellant complains that the photo spreads shown to the witnesses by the F.B.I. were impermissibly suggestive. We need not determine whether the photographs of other persons were so different from the facial contour of Green as to single him out by the process of exclusion, as appellant contends. For each teller and other bank witnesses had sufficient opportunity to view Green and his wife, and to fix the features of the pair in his or her mind. The Greens wore no masks, and the banks were well lit. The District Judge found that the eyewitnesses observed the pair for from one of four minutes. There is no "very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Burse*, 531 F.2d 1151, 1155, (2d Cir. 1976).

The surveillance photographs themselves, the best evidence when they are clear enough, show appellant in action during the robberies and attempted robberies with essential clarity. Additional proof that no misidentification was made is the similarity of technique used in the several holdups, and the arrest of the pair in possession of a gun and a holdup note.

■ The contention that the prosecution proof on Count Three, the attempted robbery of the First National City Bank, is insufficient, is without merit. Miss Yu's description fitted appellant, and the surveillance photograph is clear enough to identify Green. *See United States v. Fernandez*, 456 F.2d 638, 642 (2d Cir. 1972).

■ Nor is there any merit to appellant's claim, made for the first time on appeal, that it was error to join in a single indictment the charges relating to the three separate robberies. Appellant has caused some confusion on this point by relying upon Rule 8(b), Fed.R.Crim.P., which relates to joinder of defendants. This has led the government to conclude that he is attacking the joinder of his wife. Whatever the claim, it is clear that the failure to move for a severance before trial under Rule 8 constitutes a waiver. Rule 12(b)(2) and 12(f), Fed.R.Crim.P.; *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). Nor did appellant move at trial for a severance under Rule 14 on the ground of prejudice. *See United States v. Payden*, 536 F.2d 541, 543 (2d Cir. 1976) cert. denied, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291, (1977). Appellate review is foreclosed.

■ In any event, there is no merit to appellant's claim of prejudice. The two defendants were alleged to have "participated . . . in the same series of acts or transactions constituting an offense or offenses," Fed.R.Crim.P. 8(b), and "the offenses charged . . . are of the same or similar character . . . ." Fed.R. Crim.P. 8(a). The pattern of offenses was restricted to a short period of time, and to the midtown district of Manhattan; and the methods were the same in each instance. If ever there was a common scheme and plan permitting a joint trial of two defendants for multiple crimes, this was a classic example.

The judgment of conviction is affirmed.