UNITED STATES of America, Appellee,

v.

Charles KEENAN, Appellant.

No. 80–5025.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1981.

Decided July 30, 1981.

---

Leo Catsonis, Charleston, W. Va. (John A. Amick, Charleston, W. Va., on brief), for appellant.

Robert B. Allen, Asst. U. S. Atty., Charleston, W. Va. (Wayne A. Rich, Acting U. S. Atty., Michael E. Winck, Asst. U. S. Atty., Marye L. Wright, Asst. U. S. Atty., Charleston, W. Va., on brief), for appellee.*

Before HALL, Circuit Judge, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.

K. K. HALL, Circuit Judge:

Charles Keenan was convicted of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.[1] On appeal he contends the evidence

---

* With the consent of counsel, this case was heard by two judges because a death in the family prevented the third judge from attending oral argument.

1. 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels,

adduced at trial was not sufficient to support his conviction. We agree, and for the reasons stated in this opinion we reverse the judgment of the district court.

Keenan and John Colagrosso were indicted for scheming to defraud the Carboloy Mining Products Section of the General Electric Distribution Center (Carboloy) and the Marathon Coal Bit Company, Inc. (Marathon) of money and property through the use of the mails. The indictment charges the scheme was devised in the latter part of June, 1979, when the appellant met Colagrosso and expressed his interest in obtaining some roof pinning bits. At a second meeting, after some initial reluctance, Colagrosso, a truck driver for Marathon, told Keenan he might be able to get some bits on his next trip to Clarksburg.

On July 2, 1979, Cologrosso went to the Carboloy plant in Clarksburg to pick up some material for Marathon. Using a fabricated purchase order number purportedly chargeable to Marathon, he obtained two pallets of roof pinning bits which he sold to Keenan for $9,000.[2] Carboloy, in the course of business, mailed an invoice for this purchase to Marathon. The invoice was received by Marathon on July 17, 1979, and shortly thereafter Colagrosso's involvement in the theft was discovered.

Based upon Carboloy's mailing of the invoice, both Colagrosso and Keenan were indicated for mail fraud. Although he initially attempted to conceal Keenan's role in the theft, Colagrosso eventually implicated the appellant. Colagrosso entered a plea of guilty to the charges of mail fraud and testified as the chief prosecution witness in Keenan's trial. The jury found the appellant "guilty as charged within the indictment."

■ To sustain a conviction for mail fraud the government must prove the existence of a scheme to defraud which involves the use of the mails for the purpose of executing the scheme. *United States v. Brewer*, 528 F.2d 492, 494 (4th Cir. 1975). Keenan contends the government's proof was insufficient to establish the elements of the offense. Because we find the mailing was not for the purpose of executing the scheme to defraud Marathon and Carboloy, we do not decide if the government met its burden of proving Keenan's participation in or knowledge of the fraudulent scheme.[3]

■ Whether a mailing is deemed to be for the purpose of executing a scheme to defraud depends on "whether the mailings were sufficiently closely related to [the defendant's] scheme to bring his conduct within the statute." *United States v. Maze*, 414 U.S. 395, 399, 94 S.Ct. 645, 647, 38 L.Ed.2d 603 (1974). In *Maze* the defendant obtained goods and services from motels in several states using a stolen credit card. The motel operators mailed invoices to the bank which had issued the credit card; the

---

commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. In an attempt to conceal his theft, Colagrosso kept the packing slip which accompanied the bits and forged the initials of a Marathon employee to indicate the bits had been received. Then he substituted a valid purchase order number for the fabricated one and instructed a clerk in Marathon's accounts receivable department to alter the number on Carboloy's invoice when it was received.

3. Clearly Colagrosso had a scheme for obtaining the bits from Carboloy, but the evidence does not clearly demonstrate that Keenan participated in the planning of this scheme. Nor is it likely that Keenan had actual knowledge of Colagrosso's scheme because Colagrosso testified that he did not have a specific plan for obtaining the bits when he met Keenan. Rather he stated that he made most of his plan while at the Carboloy facility "on the spur of the moment." It would therefore appear there was not sufficient evidence of the appellant's participation in the scheme. However, the apparent lack of proof on this element of the offense may have been cured by the inclusion of an aiding and abetting charge in the indictment. "One who gives aid and comfort, or who commands, advises, instigates or encourages another to commit a crime may be said to be an aider and abettor." *Johnson v. United States*, 195 F.2d 673, 675 (8th Cir. 1952). Colagrosso's testimony clearly establishes that Keenan was the motivating force behind his scheme to steal the bits.

bank mailed statements to the true owner of the credit card. The Court found the scheme to defraud had reached fruition before the mailings occurred because the object of the scheme—to obtain services from the motels—had been accomplished when Maze checked out. The mailing of the invoices in no way affected the success of the scheme. 414 U.S. 402, 94 S.Ct. 649. Instead the mailings were directed at adjusting the accounts between the motel proprietors, the bank, and the owner of the credit card. Because the mailings were for a purpose other than the scheme, Maze's conduct was not within the mail fraud statute. 414 U.S. at 405, 94 S.Ct. at 651.

We are faced with similar facts in this appeal.[4] The object of the scheme to defraud Carboloy and Marathon was accomplished when Colagrosso got his money and Keenan got his bits. The mailing clearly occurred after the scheme had reached fruition. A mailing which occurs after the object of the scheme has been completed is not sufficiently related to the scheme to support a conviction for mail fraud. *United States v. Tarnopol*, 561 F.2d 466, 472 (3rd Cir. 1977).

We are unpersuaded by the government's argument that because an integral part of the scheme was to have Marathon process the invoice in the normal course of business, the scheme continued until the invoice was received.[5] We recognize that the use of the mails to conceal a scheme can be conduct which comes within the mail fraud statute. *United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). In *Sampson* the defendants made a "deliberate, planned use" of the mails to lull their victims into a false sense of security. 371 U.S. 80, 83 S.Ct. 175. Thus the purpose of the mailing was to delay detection of the fraudulent scheme. In contrast, the mailing here was made by a party not associated with the fraudulent scheme and most likely contributed to, rather than prevented, the detection of the scheme.

Because the government failed to adequately link the mailing of the invoice to the scheme to defraud, Keenan's conviction for mail fraud cannot stand. "The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88, 95, 65 S.Ct. 88, 151 (1944). Accordingly, the judgment of the district court is reversed.[6]

*REVERSED.*

4. *Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960) and *Kann v. United States*, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944) are also instructive. In *Parr* the defendants made unauthorized gasoline purchases using their employer's credit card. The oil company mailed invoices to the credit card holder, and in return payment was sent through the mail. The Court reversed the defendants' mail fraud convictions finding the mailings were not sufficiently connected to the scheme because it was immaterial to defendants how the oil company received payment for its services. 363 U.S. at 393, 80 S.Ct. at 1184.

In *Kann* the defendants set up a dummy corporation through which they diverted funds from another corporation for their own use. They deposited or cashed checks drawn on these diverted funds at various banks which mailed the checks to the drawee bank. The defendants' mail fraud convictions were set aside upon a finding that the mailings had occurred after the scheme to defraud was completed. 323 U.S. at 94, 65 S.Ct. at 150.

5. Although Colagrosso may well have been concerned about the success of his efforts to conceal the theft, there is no evidence that Keenan helped plan or was aware of the steps Colagrosso had taken to alter the purchase order number and the invoice, see n. 3, *supra*.

6. Keenan also urges we must reverse his conviction because he was denied due process and penalized for his refusal to admit guilt prior to sentencing. The following colloquy took place at the sentencing hearing:

THE COURT: ... Mr. Keenan, before I call upon you for what you may wish to say to the Court, I simply have a question for you.
THE DEFENDANT: Yes, sir.
THE COURT: And that is what happened to the bits?
THE DEFENDANT: Your Honor, I never received the bits.
THE COURT: Mr. Keenan, I'm going to give you about thirty minutes to think about that and I'm going to ask you to come back at 2 o'clock—
THE DEFENDANT: Yes, your Honor.

THE COURT: And conclude the sentencing hearing at that time and I'm going to ask you the same question then.

The court recessed and upon reconvening Keenan was again asked about the bits. He denied having any knowledge about them. The court then sentenced him to three years' imprisonment, fined him $1,000, and ordered him to make restitution in the sum of $22,860.

Because we reverse Keenan's conviction on other grounds, we do not decide if the district court improperly penalized the appellant for not testifying at trial or for attempting to preserve grounds for an appeal. Nor must we decide if Keenan's sentence was enhanced for his failure to "come clean." We will, however, take this opportunity to express our disapproval of the district court's efforts to compel the appellant to admit guilt under these circumstances.