UNITED STATES of America, Appellee,

v.

Hartley E. GREENLEAF, Jr., Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

William BRATTON, Defendant, Appellant.

Nos. 82–1264, 82–1265.

United States Court of Appeals, First Circuit.

Argued Sept. 15, 1982.

Decided Nov. 2, 1982.

Certiorari Denied April 4, 1983.
See 103 S.Ct. 1522, 1523.

Michael H. Reilly, Boston, Mass., with whom Thomas C. Troy, and Troy, Tommasino, Anderson & Reilly, P.C., Boston, Mass., were on brief, for defendant, appellant Hartley E. Greenleaf, Jr.

Michael H. Riley, Boston, Mass., with whom John P. White, Jr., and White, Inker, Aronson, Connelly & Norton, P.C., Boston, Mass., were on brief, for defendant, appellant William Bratton.

John M. Bowens, with whom William F. Weld, U.S. Atty., Jeremiah T. O'Sullivan, Sp. Atty., Boston, Mass., and Robert M. Waller, Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

William Bratton and Hartley E. Greenleaf, Jr., appeal from their convictions for twelve separate counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, and one count of conducting the affairs of an enterprise through a pattern of racketeering activity (RICO), in violation of 18 U.S.C. § 1962. They were tried by a jury in the United States District Court for the District of Massachusetts.

The defendants were charged with participating with Joseph "Gus" Manning in schemes to defraud the producers of three motion pictures, *The Brink's Job, Oliver's Story* and *International Velvet,* by placing on the production company payrolls the names of people who did not work. They were also charged with aiding and abetting Manning, who was a trustee and organizer for Local 25 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, (Local 25), in schemes to defraud the Union. The defendants were not alleged to have had any connection with each other in carrying out the schemes. They were appointed by Manning to serve as Teamster Captains on different movies. As Captains, they were responsible for filling out "start slips" for each Teamster employee. The start slips consisted of payroll information on one side and an Internal Revenue Service W–4 form on the other. The Captains were also responsible for submitting time cards for the employees and for distributing to them their salary checks.

The government charged that the defendants perpetrated the frauds by forging the start slips and submitting time cards in the names of three men who did not work on the movies: Henry Gatto, William O'Leary and Benjamin DeFlumere. Defendant Greenleaf also filled out a slip and submitted time cards in the name of a fictitious person, Francis Manning. The address listed on the tax and payroll information was that of Gus Manning and it was he who endorsed and cashed the salary checks. The mailings on which the government based the mail fraud charges were W–2 forms sent by the producers at the end of the year to the "no show" employees at Manning's address and contributions and remittance reports which the producers were required to send to two Teamster pension funds in the names of the "no show" employees.

The indictment alleged a scheme to defraud participated in by Manning, Bratton

and Greenleaf.[1] Manning's case was severed after the third day of trial when he complained of chest pains and was admitted to the hospital. The defendants moved for a mistrial because of the severance and the motion was denied. The jury found Greenleaf guilty on all counts and Bratton on all but one.[2] On appeal, they challenge almost every aspect of the proceeding below.

*Adequacy of the Mailings*

1. Failure to Object

Appellants challenge the sufficiency of the evidence produced by the government that the mailings charged in the indictment were "for the purpose of executing [the alleged] scheme or artifice" to defraud. The first issue before us is whether the defendants' failure to make that objection at the close of all of the evidence at trial precludes their raising the issue on appeal.

■ The defendants moved for acquittal at the close of the government's case and the motion was denied. After introducing their own witness, however, they failed to renew their motion. The rule in this circuit is that a defendant who presents evidence and fails to renew a motion for acquittal is deemed to have waived his original motion. *United States v. Kilcullen,* 546 F.2d 435 (1st Cir. 1976). In order to prevail on appeal on that ground, the defendants must then demonstrate "clear and gross" injustice. *Id.* at 441. The rule is based on the sound principle that evidentiary challenges should be put in the first instance to the trial judge, who is in the best position to rule on such matters. *Id.*

■ We see no reason to depart from the *Kilcullen* rule in this case. By failing to renew their objection to the sufficiency of the evidence at the close of their own case, the defendants denied the trial judge the opportunity to rule on the motion before sending the case to the jury. To prevail on appeal, therefore, they must demonstrate that their convictions are clearly and grossly unjust. While we find that the connection between the alleged schemes and the mailings poses a close question, we are unable to find that convictions based on those mailings are clearly and grossly unjust.

2. Nexus Between the Mailings and the Fraudulent Scheme

■ To determine whether there was clear and gross injustice in convicting the defendants of mail fraud on the evidence produced by the government, we examine both the facts surrounding the mailings alleged to have been in furtherance of the schemes and the applicable legal principles. The mailings in this case consisted of W–2 forms mailed to the "no show" workers at Manning's address by the defrauded producers and of checks and remittance reports mailed by the producers to two employee pension funds on behalf of the "no show" workers. *International Velvet* was filmed in September and October of 1977. During that time, start slips and time cards were submitted for the "no show" employees and salary checks received in their names. W–2s for those employees were mailed in January of 1978 and pension fund contributions made in their names in April of 1978. *Oliver's Story* was filmed early in 1978. *The Brink's Job* was filmed in May and June of 1978. In both cases, the time lag between the receipt of salary checks for the "no show" employees and the mailing of W–2s and pension fund contributions in their names was similar to that in the *International Velvet* filming. Thus, in each case, the mailings occurred a significant time after the receipt of the object of the scheme— the fraudulently induced salary checks. The question remaining is whether, despite the time lag, those mailings can be said to have been in furtherance of the fraudulent scheme.

1. The indictment also charged Ernest Sheehan with extorting money in furtherance of the fraudulent scheme. His case was severed and continued for health reasons prior to the jury's being sworn.

2. Bratton was found not guilty of Count XI, which charged mail fraud in connection with the motion picture, *The Brink's Job,* and resulted in the mailing of a W–2 in the name of Henry Gatto.

The law is in some confusion regarding when mailings will be found to have been in furtherance of a fraudulent scheme. On one hand, the Supreme Court has made clear that for mailings to be sufficiently closely related to a fraudulent scheme to support mail fraud convictions, "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). All that is required is that the mailings be "incident to an essential part of the scheme." *Id.* On the other hand, the Court has indicated that the success of the scheme must be dependent in some way on the mailings, either in obtaining the desired object or in avoiding or delaying detection of the scheme. *United States v. Maze,* 414 U.S. 395, 402–03, 94 S.Ct. 645, 650, 38 L.Ed.2d 603 (1973); *Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); *Kann v. United States,* 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944). *See also United States v. Blecker,* 657 F.2d 629, 636 (4th Cir. 1981); *United States v. Galloway,* 664 F.2d 161, 163 n.3 (7th Cir. 1981); *United States v. Kent,* 608 F.2d 542, 546 (5th Cir. 1979).

Some courts have read the Supreme Court's requirements broadly, accepting as a basis for mail fraud convictions any mailings that can be said to be "normal concomitant[s] of a transaction that is essential to the fraudulent scheme." *See, e.g., United States v. Galloway, supra,* 664 F.2d at 163; *United States v. Lea,* 618 F.2d 426, 430 (7th Cir.). *See also Ohrynowicz v. United States,* 542 F.2d 715 (7th Cir. 1976). Other courts have been more restrictive, rejecting mailings that "neither furthered the objective of the scheme ... nor served to conceal the fraudulent representations." *See United States v. Alston,* 609 F.2d 531, 539 (D.C.Cir.1979). *See also United States v. Keenan,* 657 F.2d 41, 43 (4th Cir. 1981); *United States v. Brown,* 583 F.2d 659 (3d Cir. 1978); *United States v. Tarnopol,* 561 F.2d 466 (3d Cir. 1977).

The government urges us to adopt a rule that any time a defendant sets in motion a scheme that leads ineluctably to mailings, he can be guilty of mail fraud. Our reluctance to do so stems from the fact that under this test, the conviction in *United States v. Maze, supra,* would have been affirmed. The mailings in *Maze,* sales slips of purchases made by the defendant, flowed automatically from his fraudulent use of a stolen credit card. Nevertheless, the Supreme Court held that the mails were not used for the purpose of executing the fraudulent scheme. 414 U.S. at 405, 94 S.Ct. at 651.

There are, on the other hand, significant differences between this case and *Maze.* The schemes in this case were much broader and more sophisticated than that of *Maze.* The schemes required for their continuing success the creation of an appearance of business as usual and the mailings at issue here were an integral part of that appearance. In addition, the defendants apparently contemplated the generation of those mailings, since they used Manning's address on the forged W–4 forms in order, one might conclude, to prevent W–2s from being sent to persons who would reveal the scheme.

We need not decide how we would rule on these mailings had the issue been properly raised below. Suffice it to say that we see no such egregious misapplication of legal principles as to constitute clear and gross injustice.[3]

### Severance

■ Besides challenging the sufficiency of the government's evidence, the appellants complain of a number of other errors in the proceeding below. They argue, first, that they were prejudiced by being tried together. On appeal, both defendants urge that joinder was improper under Fed.R.

---

3. Defendant Greenleaf also challenges the sufficiency of the evidence that he had the requisite intent to be guilty of aiding and abetting. We are satisfied that, having heard the evidence that Greenleaf forged names on the W–4 forms and lied to a federal agent and to the grand jury, a reasonable juror could find the requisite intent. The conviction was far from clear and gross injustice.

Crim.P. 8(b) because there was no evidence that they had participated in the same act or transactions. The only link between their two alleged schemes was Count 26, a substantive RICO count. Neither defendant, however, raised this issue in the district court.[4] Thus, our review is limited to whether there was plain error. *United States v. Barbosa,* 666 F.2d 704 (1st Cir. 1981). We cannot say that joinder of two defendants alleged to have perpetrated, with a common third party, almost identical schemes to defraud a common enterprise was plain error.

■ Even though initial joinder may be proper, a defendant may be entitled to severance pursuant to Fed.R.Crim.P. 14 if he can show that he would suffer substantial prejudice from a joint trial.[5] *United States v. Tashjian,* 660 F.2d 829, 834 (1st Cir. 1981); *United States v. Patterson,* 644 F.2d 890, 900 (1st Cir. 1981). Whether a severance should be granted is a question for the trial judge's discretion. *United States v. Tashjian,* 660 F.2d at 834. He should be reversed only if defendants can show that his refusal to sever deprived them of a fair trial and resulted in a possible miscarriage of justice. *United States v. Barbosa, supra,* 666 F.2d at 708; *United States v. Davis,* 623 F.2d 188, 194–5 (1st Cir. 1980).

■ We are not persuaded that the district court abused its discretion in denying the defendants' motions to sever. The indictment made clear that the defendants were charged in connection with separate motion pictures. Most of the evidence presented related to a particular motion picture. Thus, it is unlikely that the jury confused the evidence against the individu-

al defendants. The trial court emphasized to the jury that the defendants were charged in different counts and that they were to consider separately the evidence as to each count. The fact that defendant Bratton was acquitted on Count XI reassures us that the jury complied with the court's directives. *United States v. Tashjian, supra,* 660 F.2d at 834. In sum, it appears that the defendants suffered no more prejudice "than that which necessarily inheres whenever multiple defendants or multiple charges are jointly tried." *Id.; United States v. Adams,* 581 F.2d 193, 198 (9th Cir. 1978).

### The Court's Charge to the Jury

■ Appellant Greenleaf challenges the district court's instruction to the jury. To convict the defendants of mail fraud the government was required to prove that they knowingly and willfully devised the alleged fraudulent scheme. The court charged the jury that "[i]t is reasonable . . . for you to infer that a person ordinarily intends the natural and probable consequences of any act that you find he knowingly did."

We have repeatedly warned against this and similar language that suggests a mandatory inference of intent and thus relieves the government of its burden of proof on the issue of intent. *See United States v. Ariza-Ibarra,* 605 F.2d 1216 (1st Cir. 1979) (virtually identical instruction); *see also United States v. Winter,* 663 F.2d 1120 (1st Cir. 1981). In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held unconstitutional an instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts", because it suggested a mandatory presumption of intent.

4. Defendant Greenleaf moved before trial for severance on the grounds that the government intended to introduce "as against him statements made by other persons in the nature of admissions or confessions which are not admissible against this defendant and which will prejudice this defendant's right to a fair trial." He did not suggest that joinder was improper under Rule 8(b). Defendant Bratton moved for severance on the fifth day of the trial. He did not specify his grounds. On appeal, he treats

that motion as one for misjoinder under Rule 8(b). At that point in the trial, however, his motion, whether construed as an 8(b) challenge to initial joinder or a Rule 14 motion for severance, was too late. *See* Rule 12(b). We therefore look only for plain error in the denial of defendant Bratton's motion and find that there was none.

5. As noted in footnote 4, only defendant Greenleaf made a timely motion pursuant to Rule 14.

We repeat our warning here, although we do not find that the instruction requires a reversal of the convictions. This instruction is saved by the fact that it makes clearer than did the instruction condemned in *Sandstrom* that the jury is not required to infer intent from the defendant's actions, and because the instructions taken as a whole adequately informed the jury that the government has the burden of proving intent beyond a reasonable doubt.

### Breach of Fiduciary Duty

■ Appellants' remaining challenges are without merit. Appellant Greenleaf urges that the convictions should be reversed because the indictment alleged that the scheme was devised to defraud both the employer and the appellants' union and the jury was permitted to convict if it found either portion of the scheme to be proven beyond a reasonable doubt. He challenges the portion of the indictment alleging fraud based on breach of a fiduciary duty to Local 25 and its members. Appellant acknowledges that breach of a fiduciary duty may in some cases support a conviction for mail fraud. *See United States v. Barta,* 635 F.2d 999, 1006 (2d Cir. 1980) ("§ 1341 reaches some schemes causing intangible loss"). It is not clear whether he would have us find that Manning (whom appellant is charged with aiding and abetting) was not in a fiduciary relationship with the union or whether mail fraud requires an additional duty, not borne by Manning. In either case, we find his arguments unpersuasive. Ruling on pretrial motions to dismiss, the district court specifically addressed the issue of whether Manning was in a fiduciary relationship with the union sufficient to support a mail fraud count. The court found that "[a]s the union trustee and organizer, he was responsible for negotiating contracts on the union's behalf. This appears to be a 'position of great trust and power' equivalent to that of Barta." *See United States v. Barta, supra.* It therefore sustained the mail fraud counts alleging breach of a fiduciary duty against Manning, and against Bratton and Greenleaf as his aiders and abetters. We see no reason to reject this finding.

■■ The second half of appellant's challenge—that mail fraud requires an additional affirmative duty imposed by statute or special circumstance is based on an incorrect reading of the applicable case law. It is well settled that breach of a fiduciary duty, standing alone, does not constitute mail fraud. *United States v. Mandel,* 591 F.2d 1347, 1362 (4th Cir. 1979). Appellant relies on *United States v. Barta, supra,* to argue that the additional requirement must be a specific duty, such as the duty found in *Barta,* to disclose information. The court in *Barta,* however, did not indicate that mail fraud requires a breach of a specific duty. It merely noted that "[t]he additional element which frequently transforms a mere fiduciary breach into a criminal offense is a violation of the employee's duty to disclose material information to his employer." 635 F.2d at 1006. There are other elements that transform a fiduciary breach into mail fraud. The easiest case is where there is a recognizable scheme formed with specific intent to defraud. *United States v. Bohonus,* 628 F.2d 1167, 1172 (9th Cir. 1980); *United States v. Goss,* 650 F.2d 1336, 1346 (5th Cir. 1981). There are some close questions in this case, but whether there was enough evidence for the jury to find a recognizable scheme formed with specific intent to defraud is not one of them. There must, of course, be some loss—though intangible—to the union, but there was sufficient evidence for the jury to find that the union was deprived at least of the loyal and faithful service and honest representation owed to them by Joseph Manning.

### Confrontation Right

■ Appellant Bratton argues that he was denied his Sixth Amendment right to confront the witnesses against him because he was incriminated by hearsay evidence introduced against Manning and then, when Manning's case was severed for medical reasons, was unable to cross-examine Manning regarding the hearsay statements. The judge instructed the jury to consider

the testimony only against Manning. Appellant relies on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), to argue that "[w]hen powerfully incriminating inadmissible hearsay is introduced into evidence and the defendant is unable to cross-examine the maker of the hearsay statement, the defendant's Sixth Amendment right of confrontation is violated even when the court has instructed the jury to disregard the statement." We agree. In this case, however, we do not find the statement to have been powerfully incriminating.

 The hearsay statement challenged by appellant was related by William O'Leary. O'Leary testified that

> [Manning] said, "We're in trouble." I said, "What do you mean 'we'? He said, "Someone signed an application, used your signature, social security number and put you on the payroll of the Brinks Job."

> [Manning] also said, "I yelled at this person for doing this."

Appellant recognizes that the statement, standing alone, is not powerfully incriminating. He argues, however, that the statement must be taken in conjunction with the testimony of another witness who testified that the person who worked as Manning's subordinate on *The Brink's Job* was Bratton. Even without the hearsay statement, however, there was substantial evidence that Bratton had forged O'Leary's name on the application. Counsel for Bratton admitted as much in his closing argument, when he urged that Bratton had an innocent purpose in writing in O'Leary's name. This case is thus virtually indistinguishable from *United States v. DiGregorio*, 605 F.2d 1184, 1190 (1st Cir. 1979), where we held that because "[t]here was substantial evidence independent of the extrajudicial statement to link [the defendant] to the conspiracy ... [t]he fact that a codefendant's admission tended to corroborate the government's case against [the defendant] is simply not enough" to satisfy the "powerfully incriminating" standard of *Bruton*.

### *Consecutive Sentences for RICO and Mail Fraud*

 Finally, both appellants argue that the court's imposition of consecutive sentences for the RICO convictions and for the predicate offenses of mail fraud violates the Double Jeopardy Clause. We are persuaded that RICO and mail fraud constitute separate offenses, *see United States v. Boylan*, 620 F.2d 359, 361 (2d Cir. 1980), and that Congress intended to impose separate sentences for each offense. *United States v. Rone*, 598 F.2d 564, 571–72 (9th Cir. 1979).

*The judgment of the district court is affirmed.*