961 F.2d 211
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Gregory R. GORRELL, Defendant-Appellant.
 No. 91-5289.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1992
Decided: April 30, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden II, Chief District Judge. (CR-90-298-2)
 Argued: Allan Paul Ides, WASHINGTON & LEE LAW SCHOOL, Lexington, Virginia, for Appellant.
 Mary Stanley Feinberg, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 On Brief: Rudolph L. diTrapano, P. Rodney Jackson, J. Timothy DiPiero, DITRAPANO & JACKSON, Charleston, West Virginia, for Appellant.
 
 
 1
 Michael W. Carey, United States Attorney, Paul Thomas Ferrell, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 
 
 2
 S.D.W.Va.
 
 
 3
 AFFIRMED.
 
 
 4
 Before RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 5
 On November 16, 1990, a federal grand jury indicted Appellant Gregory Gorrell on ten counts of mail fraud in violation of 18 U.S.C. § 1341 (1988) and one count of using a fictitious name in connection with a mail fraud scheme in violation of 18 U.S.C.s 1342 (1988). The jury returned guilty verdicts on all eleven counts on April 4, 1991. The United States District Court for the District of West Virginia entered judgment accordingly. Gorrell appeals his convictions, arguing that the government failed at trial to show the required nexus between Gorrell's scheme to defraud a West Virginia law firm and Gorrell's use of the United States mails. We affirm the district court's judgment.
 
 I.
 
 6
 Appellant Gregory Gorrell was the billing partner in the environmental department of Jackson and Kelly, a West Virginia law partnership. In a scheme to defraud his firm, Gorrell prepared fraudulent internal billing records which substituted fake charges for services that HGA Associates, a fictitious consulting firm, had purportedly performed on behalf of some clients for a portion of the billable hours that Jackson and Kelly should have properly charged to those clients. Gorrell would add the fake charges in amounts equal to the amounts of the omitted billable hours, such that the total amounts due of the clients, as reflected in the internal records, were equal to the amounts that the clients actually owed Jackson and Kelly for legal services.
 
 
 7
 Thus, Gorrell was later able to mail the clients invoices which correctly stated the total amounts due to the partnership.
 
 
 8
 As billing partner, Gorrell had authority to issue Jackson and Kelly partnership checks to consulting firms in advance of the time Jackson and Kelly would collect those costs from the client. Gorrell issued eleven Jackson and Kelly checks to HGA Associates, the fictitious entity, and then arranged for these checks to be deposited into an account over which Gorrell had exclusive control. In this manner, Gorrell embezzled $368,630.00 in Jackson and Kelly partnership funds over a two-year period from 1987 to 1988.
 
 II.
 
 9
 Appellant Gorrell's argument on appeal consists of two principal contentions. First, Gorrell argues that the invoices delivered through the Postal Service accurately stated the total amounts that the clients owed Jackson and Kelly, and were not in themselves fraudulent. Second, Gorrell asserts that the invoices were mailed only after Gorrell had received the checks issued to HGA Associates, and therefore were mailed only after his scheme for embezzling firm funds was complete. Thus, Gorrell argues, the mailing of the invoices could not be in furtherance of a scheme to defraud Jackson and Kelly, and cannot serve as the basis of mail fraud convictions under 18 U.S.C. §§ 1341, 1342.[1] It is well established that a mailing for the purpose of executing a scheme to defraud is an essential element of an offense under 18 U.S.C. § 1341.[2] Pereira v. United States, 347 U.S. 1, 8 (1953). However, "the mailed material may be totally innocent, and yet it still may be found that a scheme to defraud exists" in violation of section 1341. United States v. Murr, 681 F.2d 246, 249 (4th Cir.), cert. denied, 459 U.S. 973 (1982). "[E]ven mailing routine, completely accurate documents can result in a mail fraud violation if the mails were used to further a scheme to defraud." Ferleger v. First American Mortgage Co., 662 F. Supp. 584, 588 (N.D. Ill. 1987). Furthermore, this court has previously stated, "The requisite relation of mailings to the fraudulent scheme 'does not turn on time or space, but on the dependence in some way of the completion of the scheme ... on the mailings in question.' " United States v. Blecker, 657 F.2d 629, 636 (4th Cir. 1981), cert. denied, 454 U.S. 1150 (1982) (quoting United States v. LaFerriere, 546 F.2d 182, 187 (5th Cir. 1977)). Hence, the relevant inquiry is not whether the mailed invoices were accurate documents, nor whether the mailing occurred after Gorrell had completed the diversion of firm funds to HGA Associates, the fictitious entity. Rather, the pertinent question is whether the invoices were mailed in furtherance of Gorrell's scheme to defraud Jackson and Kelly. We are of the opinion that a connection sufficient to support Gorrell's mail fraud convictions exists between the mailing of the invoices and Gorrell's scheme to defraud the law firm.
 
 
 10
 Our decision in United States v. Caldwell, 544 F.2d 691 (4th Cir. 1976), is relevant here. In Caldwell, the defendant, chairman of a West Virginia bank, was indicted along with the State Treasurer of West Virginia on four counts of mail fraud under 18 U.S.C. § 1341. 544 F.2d at 692-93. Pursuant to defendant's scheme, the State Treasurer and his wife stayed at the Greenbrier Hotel, a luxury resort in West Virginia, at the defendant chairman's invitation and at the bank's expense. Id. at 693. As a result of the bank's payment of the State Treasurer's expenses at the Greenbrier, the Treasurer, in violation of state law, favored the bank with large deposits of state funds in non-interest-bearing accounts. Rejecting defendant's contention that there was insufficient evidence to show that use of the mails constituted an essential step in the execution of his scheme, we stated,
 
 
 11
 Payment to the Greenbrier for the services and accommodations it provided was essential to the scheme, and defendant elected to make payment by mail. It matters not, as defendant argues, that payment could have been accomplished in some other manner ... or that the bank routinely employed the mails for its countless other routine transactions. The use of the mails need not in and of itself be fraudulent to constitute an offense under the statute. Nor is it a good defense that the materials mailed were innocent in themselves if they are part of a scheme to defraud. All that is needed is proof that the mails played a significant part in the execution of the scheme. That fact was established.
 
 
 12
 544 F.2d at 696 (citations omitted).
 
 
 13
 Like the defendant in Caldwell, 544 F.2d at 696, who used the mails only to make payments to the Greenbrier which were in themselves accurate, Gorrell mailed to clients invoices which were in themselves honest and accurate. But here, Jackson and Kelly had authorized Gorrell to advance firm funds to clients in order to cover the costs of legitimate consulting services, with the expectation that the firm would later be reimbursed for those costs out of payments from clients on future invoices. Because Gorrell purported to advance firm funds to clients to cover the costs of services rendered by HGA Associates, the fictitious consulting firm, he used the mailed invoices to obtain the payments needed to reimburse the firm for the funds which he fraudulently diverted to his own benefit. The final step in the fraud occurred when Jackson and Kelly's bookkeeper, who was unaware of the fraud, allocated money received from clients to fees and to expenses in accordance with Gorrell's fraudulent internal billing records. We are therefore persuaded that the mailed invoices "played a significant part" in Gorrell's scheme to defraud his partners, and that the facts of this case are sufficient to convict Gorrell under 18 U.S.C. §§ 1341, 1342.
 
 
 14
 Our review of the record and the district court's orders discloses that other arguments raised by the Appellant on appeal are without merit.
 
 
 15
 For the foregoing reasons, the judgment of the district court is hereby
 
 
 16
 AFFIRMED.
 
 SIMONS, Senior District Judge, dissenting:
 
 17
 I respectfully dissent from the majority opinion in this case because the facts as I understand them to be are very similar to, and come within, the ambit of the rulings in United States v. Maze, 414 U.S. 395 (1974), and United States v. Keenan, 657 F.2d 41 (4th Cir. 1981). In these cases, appellants' convictions under the mail fraud statute were reversed on the ground that the use of the mails was in no way essential to the success of the appellant's fraudulent scheme.
 
 
 18
 The majority opinion in this case sets out the background of Gregory Gorrell's scheme, but it does not discuss the uncontroverted testimony of John McClaugherty, the managing partner of Gorrell's law firm. McClaugherty testified that if a client failed to pay an expense that had been prepaid by the firm (like the HGA checks), the firm would absorb the loss and there would be no recourse against the billing attorney. McClaugherty's testimony distinguishes this case from Schmuck v. United States, 489 U.S. 705 (1989), since it establishes that the mailings to and from clients were not "incident to an essential part of the scheme." Ibid, at 711.[1] The same testimony also makes me unable to join the majority's view that "[Gorrell] used the mailed invoices to obtain the payments needed to reimburse the firm for the funds which he fraudulently diverted to his own benefit."
 
 
 19
 There is no evidence in the record that Gorrell ever mailed the HGA Associates checks after he received them from his firm's accounting department, nor is there any evidence that any of these checks were forwarded to Gorrell by the mails.
 
 
 20
 I conclude from the record that any mailing that took place occurred after the appellant had altered the internal accounting of his law firm, so as to accomplish the payment of funds to his fictitious company, HGA Associates. In this connection, the record reveals that the invoices received by the clients for whom Gorrell had performed services were for the correct amount, i.e., they reflect the actual work performed by Gorrell for that client and were for the proper amounts due by those clients for regular services rendered.[2] The false billing memos were not sent to the clients.
 
 
 21
 Once Gorrell had manipulated the firm's accounting procedures, he was free to receive the HGA Associates' checks without any dependence upon any use of the mails. In Judge Hall's persuasive opinion in Keenan, supra, this court rejected the government's contention "that because an integral part of the scheme was to have [the victim] process the invoice in the normal course of business, the scheme continued until the invoice was received." 657 F.2d at 43. The court recognized in that case that while the use of the mails to conceal a fraudulent scheme can be conduct coming within the purview of the mail fraud statute, the mailing involved was made by a person not associated with the fraudulent scheme and was not made to prevent the detection of the scheme. I read the record to support the same conclusion here.
 
 
 22
 Even though I abhor the fraudulent tactics employed by Gorrell in defrauding his law firm, nevertheless, my view is that the holdings in Maze and Keenan, supra, mandate that Gorrell's conviction under the mail fraud statute be reversed.
 
 
 
 [1]
 Section 1341 provides in pertinent part,
 Whoever, having devised ... any scheme ... to defraud, ... for the purpose of executing such scheme ... places in any ... authorized depository for mail matter, any matter ... whatever to be sent ... by the Postal Service, or takes ... therefrom, any such matter ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.
 18 U.S.C. § 1341 (1988).
 Section 1342 provides in pertinent part,
 Whoever, for the purpose of conducting ... by means of the Postal Service, any scheme ... mentioned in section 1341 of this title ... uses ... any fictitious ... name ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.
 18 U.S.C. § 1342 (1988).
 
 
 [2]
 Because a "scheme ... mentioned in section 1341" is the offense underlying Gorrell's conviction under section 1342, see 18 U.S.C. § 1342, a mailing for the purpose of executing a scheme is also an essential element of Gorrell's offense under section 1342
 
 
 [1]
 The fact that on repeated occasions Gorrell received HGA checks before the corresponding client invoices were mailed is further evidence that such mailings were not "incident to an essential part of the scheme."
 
 
 [2]
 The majority opinion states that"Gorrell was later able to mail the clients invoices which correctly stated the total amounts due to the partnership." I am unable to find support in the record for the view that Gorrell was involved in the mailing of invoices. The testimony of James Lowen indicates that client invoices were mailed by billing clerks in the firm's accounting department