

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-26-2006

# USA v. Askew

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2675

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Askew" (2006). *2006 Decisions.* Paper 297.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 04-2675/05-1462/05-1463

UNITED STATES OF AMERICA
v.
ANTHONY ASKEW,
Appellant Nos. 04-2675/05-1462

UNITED STATES OF AMERICA

v.
MAURICE ASKEW,
Appellant No. 05-1463

Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. Nos. 03-cr-00244-02 & 03-cr-00244-04)
District Judge: Hon. Arthur J. Schwab

Submitted pursuant to Third Circuit LAR 34.1(a)
October 3, 2006

Before: McKEE and AMBRO, and NYAARD, *Circuit Judges*,

(Opinion filed: October 26, 2006)

OPINION

McKEE, *Circuit Judge*.

In these consolidated appeals, Anthony Askew and Maurice Askew challenge the

final judgment of their convictions. For the reasons that follow, we will affirm.

1

# I. DISCUSSION[1]

Anthony Askew makes a number of arguments in support of his appeal.[2] Maurice Askew makes only one. Each argument is discussed separately below.

## A. Probable Cause for the Search Warrant.

Anthony Askew argues that the district court erred in not suppressing the evidence seized from his apartment during the execution of the search warrant because the supporting affidavit did not establish probable cause for the search.

Our review of the district court's review of the magistrate judge's conclusion that the affidavit established probable cause to issue a search warrant is plenary. *United States v. Conley*, 4 F.3d 1200, 1204 (3d Cir. 1993) (citations omitted). "In contrast, [we] exercise only a deferential review of the *initial* probable cause determination made by the magistrate." *Id*. at 1205 (citations omitted) (emphasis in original). We "may not conduct a *de novo* review of a probable cause determination." *Id*. (citation omitted). "Even if [we] would not have found probable cause . . . [we] must nevertheless uphold [the] warrant so long as the issuing magistrate's determination was . . . consistent with the minimal substantial basis standard." *Id.*

---

[1] Since we are writing primarily for the parties who are familiar with this case, we need state the factual or procedural background of this appeal except insofar as is helpful to our brief discussion.

[2] Anthony Askew originally argued that the evidence seized during the search of his apartment should have been suppressed because the warrant was executed in violation of the "knock and announce" rule. However, as a result of the recent decision in *Hudson v. Michigan*, __ U.S. __, 126 S. Ct. 2169 (2006), he has withdrawn that argument.

Anthony Askew claims the warrant was not based upon probable cause because the only allegations in the affidavit linking his apartment to the July 8, 2003 bank robbery were as follows:  (1) the FBI was investigating a series of bank robberies committed by armed African-Americans whose method of operation was identical to the one described in the affidavit; (2) Maurice Askew and Anthony Williams were suspects in those bank robberies; and (3) cell phone records indicated that Maurice Askew had called Anthony Askew at some undetermined time.  According to Anthony, this is not sufficient to support a search of his apartment.  However, the affidavit contained much more than the meager allegations Anthony relies upon.

The affidavit also set forth the following:

♦ the S&T Bank in Murrysville had been robbed earlier that day by two armed African-American males who left the bank with the money in a black duffel bag and escaped in a stolen Buick;

♦ shortly after the robbery, an eyewitness saw a blue-green Chevy Suburban followed by a Buick pull off into a church parking lot approximately one mile from the site of the robbery;

♦ the FBI had been investigating other bank robberies in the area whose methodology was substantially similar to the robbery at the S&T Bank in Murrysville and Anthony Williams and Maurice were among the suspects in those robberies;

♦ phone records revealed calls between Maurice Askew and Anthony Askew;

♦ Anthony Williams had access to a blue-green Chevy Suburban;

♦ shortly after the robbery at issue, police determined that the blue-green Chevy Suburban was not at Williams' residence, but it

3

returned there after the robbery;

♦ at approximately 1:15 p.m. on July 8, 2003, police conducting a surveillance of Williams' residence reported that three African-Americans left Williams' residence in the blue-green Chevy Suburban and traveled to Anthony Askew's residence; and

♦ an individual got out of the blue-green Chevy Suburban carrying a black duffel bag and entered Anthony Askew's residence with the bag and remained there, and the other occupants of the Suburban returned to Williams' residence.

These averments were sufficient to allow the magistrate judge to conclude that there was a substantial likelihood that evidence relating to the July 8, 2003 bank robbery could be found at Anthony Askew's apartment. Accordingly, the resulting search of his apartment was supported by probable cause.

## B. Voice Identification Evidence.

Anthony Askew argues that the district court erred in allowing the government to introduce trial testimony of a voice identification by Wayne Fischer, who had been present during the July 8, 2003 robbery at the S&T Bank in Murrysville. Fischer testified that he had previously heard Anthony Askew's voice, and that it matched the voice of one of the armed bank robbers at the S&T Bank who had spoken directly to him during the robbery. Fischer was able to make the comparison because he was present at the suppression hearing and heard Anthony Askew testify.[3] Anthony claims that evidence

---

[3]Fischer did not testify that he heard Anthony Askew's voice during the suppression hearing. At the district court's direction, he testified that he heard the voice at some undetermined time and recognized it as the voice of one of the robbers.

4

violated his Fifth Amendment privilege against self-incrimination and interfered with his right to challenge an unreasonable search under the Fourth Amendment by using his own testimony against him at trial. Both arguments are meritless.

The Fifth Amendment privilege against self-incrimination protects a defendant from being compelled to provide testimonial evidence against him/her self. It does not shield a defendant from producing real or physical evidence. *See generally Pennsylvania v. Munoz*, 496 U.S. 582 (1990); *Schmerber v. California*, 384 U.S. 757 (1986). Moreover, it is a "well-settled rule that the sound of a defendant's voice, even if heard during privileged communications, is not itself testimonial, and therefore is not protected by the Fifth Amendment privilege against self-incrimination." *United States v. Oriakhi*, 57 F.3d 1290, 1299 (4th Cir. 1995) (citing *United States v. Dionisio*, 410 U.S. 1, 8 (1973)). Thus, "a criminal suspect may be compelled to produce a voice exemplar without impinging on Fifth Amendment protections." *Id.* (citation omitted). Since a voice exemplar can be compelled under the Fifth Amendment, there is clearly no constitutional violation when a witness compares a defendant's voice to the voice of someone the witness heard during a bank robbery. *See Oriakhi,* 57 F.3d at 1299.

The second prong of Anthony Askew's challenge to the voice identification is equally meritless. He relies on the Supreme Court's decision in *Simmons v. United States*, 390 U.S. 377 (1968), to support his claim that the voice identification interfered with his right to challenge an unreasonable search under the Fourth Amendment because it used

his own testimony against him at trial. However, *Simmons* has nothing to do with nontestimonial evidence such as a voice exemplar. Rather, *Simmons* held that a defendant's pre-trial testimony at a suppression hearing may not later be used against him at trial without his consent. *Id.* at 394. The dispute concerned the substance of a defendant's pre-trial testimony, and the issue was whether the substance of a defendant's statements during a suppression hearing could later be used against him at trial without violating the Fifth Amendment guarantee against self incrimination. That is not the situation here, and we are not persuaded by Anthony Askew's attempt to link the holding of *Simmons* to the facts before us here.

### C. Sufficiency of the Evidence.[4]

At the close of the government's case, the district court denied Anthony Askew's motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c)(1). Anthony did not renew his motion for judgment of acquittal at the close of the evidence. Accordingly, we review his challenge to the sufficiency of the evidence for plain error. *United States v. Anderson*, 108 F.3d 478, 480 (3d Cir. 1997). There was no error, and certainly no plain error, and the argument to the contrary is wholly without merit.

---

[4]"The standard of review is particularly deferential when deciding whether a jury verdict is based on legally sufficient evidence." *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002) (citation and internal quotations omitted). "It is not our role to weigh the evidence or to determine the credibility of the witnesses." *Id.* (citation omitted). "We must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." *Id.* (citation omitted).

6

The only issue at trial was the identity of the people who committed the charged crimes. All other elements in connection with the charged crime were stipulated prior to the close of the trial. Anthony Williams tied Anthony Askew to each of the bank robberies the latter was charged with. Williams testified that, as to each of those robberies, Anthony Askew had stolen a car the night before the robbery, and the next day Williams and Anthony Askew drove to the respective bank in the stolen car. Once at the bank, they entered carrying firearms, and Williams jumped over the teller counter to get the money from tellers while Anthony Askew controlled the lobby area at gunpoint. According to Williams, they fled in the stolen car, which they then abandoned.

That testimony would, by itself, be sufficient to convict Anthony Askew of each of the robberies he was charged with committing with Williams, but there is more. Nicole Harris testified that she was the getaway driver in two of the four robberies, and that both Williams and Anthony Askew participated in the armed robbery of USAir Federal Credit Union and the S&T Bank in Murrysville. Accordingly, Anthony Askew's sufficiency argument is frivolous.

### D. Improper Joinder.

Anthony and Maurice Askew argue that their joinder was improper and the district court therefore erred in refusing to sever their trials. Fed.R.Crim.P. 8(b) provides, in relevant part:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same

7

series of acts or transactions, constituting an offense or offenses.

The Askew brothers argue that their joinder was improper because there were six separate bank robberies, the robberies were unrelated, there was no allegation of a conspiracy tying each of them to all of the robberies, no common scheme or plan was alleged, nor was there any allegation of a joint undertaking directed toward a common goal. Thus, they argue that there was no nexus among the six robberies, and they were therefore not "in the same series of acts or transactions." We disagree.

Joinder of defendants is proper where they are charged with virtually identical schemes and where all of the schemes are linked together by a common third party. *United States v. Cavale*, 688 F.2d 1098, 1107 (7th Cir. 1982); *see also United States v. Greenleaf*, 692 F.2d 182 (1st Cir. 1982). Here, the Askew brothers robbed banks with a common actor, Anthony Williams. The same method of operation was employed to rob the banks, and the banks were all robbed during a similar time frame. Their conduct thus formed a series of criminal activities involving a common actor, common methods, and a common time frame. There was no violation of Rule 8(b).[5]

---

[5]Fed.R.Crim.P. 12(b)(3) and 12(e) provide that any motion to sever charges or defendants must be filed before trial improper joiner is waived. Accordingly, a number of courts have held that the failure to file either a Rule 8 or Rule 14 objection before trial precludes appellate review. *See, e.g., United States v. Mann*, 161 F.3d 840, 862 (5th Cir. 1998); *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995); *United States v. Gio*, 7 F.3d 1279, 1285-85 (7th Cir. 1993); *United States v. Castro*, 1107, 1109 (9th Cir. 1992); *United States v. Green*, 561 F.2d 423, 426 (2d Cir. 1977). Maurice Askew never filed a motion to sever alleging improper joinder in the district court. Consequently, the government argues that he has waived that issue and cannot raise it on appeal. However,

(continued...)

Moreover, even if joinder were improper, misjoinder is subject to a harmless error analysis, and reversal is only warranted if the joinder has resulted in clear and substantial prejudice resulting in a manifestly unfair trial. *United States v. Eufrasio*, 935 F.2d 553, 566-68 (3d Cir. 1991). "In assessing whether joinder was prejudicial, of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized." *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994). "Central to this determination is the trial judge's diligence in instructing the jury on the purpose of the various types of evidence." *Id.* Here, the district court gave the following instruction:

> It is your duty to give separate and individual consideration to the case of each defendant. When you do so, you should analyze what the evidence in the case shows with respect to that defendant, leaving out of consideration entirely any evidence admitted solely against the other defendant.

> Each defendant is entitled to have his case determined from the evidence as to his own acts, statements and conduct, and any other evidence in the case which may be applicable to him.

> The fact that you return a verdict of guilty or not guilty to . . . to one defendant, should not in any way affect your verdict regarding the other defendant.

The instruction was appropriate and informed the jury of the need to compartmentalize the evidence. Nothing on this record suggests the jury had any difficulty doing just that and applying relevant evidence to each defendant.

---

[5](...continued)
because we have found that joinder was proper, we do not believe that is necessary to determine if Maurice Askew can raise the issue on appeal.

## II. CONCLUSION

For all of the above reasons, we will affirm the judgments of conviction.